The CITY OF KELLER, Petitioner,

v.

John W. WILSON, Grace S. Wilson, Johnny L. Wilson and Nancy A. Wilson, Respondents.

No. 02–1012.

Supreme Court of Texas.

Argued Oct. 19, 2004.

Decided June 10, 2005.

Rehearing Denied Sept. 2, 2005.

---

Dabney D. Bassel, Larry Bracken, Law Snakard & Gambill, P.C., Fort Worth, Douglas H. Conner III, L. Stanton Lowry, Boyle & Lowry, L.L.P., Irving, for petitioner.

James B. Barlow, Barlow & Garsek, Fort Worth, Robert L. Russell Bush, Bush & Morrison, Arlington, David R. Casey, Hurst, for respondents.

Jay Doegey, Assistant City Attorney for the City of Corpus Christi, Texas, Corpus Christi, Theodore P. Gorski Jr., Office of the City Attorney for City of Fort Worth, Mark G. Daniel, Evans Gandy Daniel & Moore, Fritz Quast, Taylor Olson Adkins Sralla & Elam, LLP, Fort Worth, Monte Akers, Texas Municipal League, Austin, Michael A. Bucek, Senior Assistant City Attorney, Irving, Robert F. Brown, Brown & Hofmeister, L.L.P., Richardson, Bruce S. Powers, Assistant County Attorney, Michael A. Stafford, Harris County Attorney, Houston, for Amicus Curiae.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, and Justice GREEN joined, and in which Justice O'NEILL and Justice MEDINA joined as to Parts I through IV.

Must an appellate court reviewing a verdict for legal sufficiency start by considering all the evidence or only part? Over the years, we have stated both as the proper scope of review. While some see the standards as opposing, we disagree; like a glass that is half-full or half-empty, both arrive at the same point regardless of where they start.

But both standards must be properly applied. Rules and reason sometimes compel that evidence must be credited or discarded whether it supports a verdict or contradicts it. Under either scope of review, appellate courts must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. As we find the evidence here meets neither standard, we reverse.

## I. Factual and Procedural History

The City of Keller is one of several fast-growing communities on the outskirts of

Fort Worth.[1] As part of that growth, the City approved plans for two new subdivisions, Estates of Oak Run and Rancho Serena, including plans for storm water drainage.

The Wilsons own property southeast of the new subdivisions, with a tract owned by Z.T. Sebastian lying between. Before development, surface water flowed generally north to south from the land where the subdivisions were built, across the Sebastian and Wilson properties, and into the Little Bear Creek Watershed.

In 1991, the City adopted a Master Drainage Plan providing for drainage easements across both the Sebastian and Wilson properties, and thence into Little Bear Creek. The City's codes require developers to comply with the Master Plan, to provide drainage for a 100–year rain event, and to avoid increasing the volume or velocity of water discharged upon downhill properties.

The developers of Oak Run and Rancho Serena submitted plans to the City indicating they would buy a drainage easement and build a ditch forty-five feet wide and more than two hundred yards long across the Sebastian property, and deed both to the City upon completion.[2] The plans also included detention basins on the subdivision properties, but omitted any drainage easement or ditch across the Wilsons' property. The City's director of public works approved the developers' plans, and the City accepted the works on completion.

In accordance with the Master Plan, the City built a box culvert south of the Wilsons' property. But as the developers' drainage ditch ended at the Wilsons' north property line, there was no link between the two. The Wilsons alleged and the jury found this omission increased flooding on the Wilsons' property, ruining eight acres of farmland the jury valued at almost $300,000.

■ To recover damages for inverse condemnation, the Wilsons had to prove the City intentionally took or damaged their property for public use, or was substantially certain that would be the result.[3] They do not allege the City intentionally flooded their land, but do allege it approved revised plans that it knew were substantially certain to have that effect.

The City contends no evidence supports the jury's finding of an intentional taking. It presented evidence that engineers for the developers, for the City, and for an outside firm the City retained all certified that the revised drainage plan complied with the City's codes and regulations— including the ban against increasing downstream runoff. Thus, the City asserts it had no reason to be substantially certain the opposite would occur, until it did.

A divided court of appeals rejected this contention.[4] In its legal sufficiency review, the court refused to consider the various engineers' certifications because "we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary."[5] The City challenges

---

1. The City of Fort Worth asserts in an amicus brief that in 2001 alone it approved 325 subdivision plats creating 5,857 residential lots within its extraterritorial jurisdiction, which of course excludes surrounding communities.

2. Evidence at trial and briefs by amici indicate that cities normally acquire title to these easements to ensure they are properly mowed

and maintained after the developers' departure.

3. Tex. Const. art. I, § 17; *City of Dallas v. Jennings*, 142 S.W.3d 310, 313–14 (Tex.2004).

4. 86 S.W.3d 693, 715, 717.

5. *Id.* at 700.

this omission as applying the wrong scope of review.

We have on many occasions stated the scope of review precisely as the court of appeals says (the "exclusive" standard).[6] But we have also stated that a reviewing court must consider "*all* of the evidence" in the light favorable to the verdict (the "inclusive" standard).[7] Sometimes we have mentioned neither reviewing all evidence nor disregarding some part of it.[8] Finally, we have sometimes expressly mentioned both.[9]

Although this Court has used both the exclusive and the inclusive standards interchangeably over the years, commentators say the two are different.[10] Because this

6. *See, e.g., Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003) (per curiam); *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex.2000); *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992); *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990); *Burkard v. ASCO Co.*, 779 S.W.2d 805, 806 (Tex.1989) (per curiam); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex. 1988); *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex.1987); *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985); *Tomlinson v. Jones*, 677 S.W.2d 490, 492 (Tex.1984); *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981) (per curiam); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex.1976); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Wininger v. Ft. Worth & D.C. Ry. Co.*, 105 Tex. 56, 143 S.W. 1150, 1152 (1912).

7. *See, e.g., St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex.2002) (plurality op.); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998); *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex.1998); *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983); *Burk Royalty v. Walls*, 616 S.W.2d 911, 922 (Tex. 1981); *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970); *De Winne v. Allen*, 154 Tex. 316, 277 S.W.2d 95, 97 (1955); *Hall v. Med. Bldg. of Houston*, 151 Tex. 425, 251 S.W.2d 497, 498 (1952).

8. *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 552 (Tex.2004); *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 684 (Tex.2004); *Lozano v. Lozano*, 52 S.W.3d 141, 144 (Tex.2001) (per curiam); *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 247 (Tex.1999); *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex. 1998); *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 513 (Tex.1998).

9. *See, e.g., Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004); *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994) (per curiam); *compare Biggers v. Cont'l Bus Sys., Inc.*, 157 Tex. 351, 303 S.W.2d 359, 363 (1957) ("We may consider *only* that evidence, if any, which, viewed in its most favorable light, supports the jury findings, and we must disregard all evidence which would lead to a contrary result.") (emphasis added), *with Biggers v. Cont'l Bus Sys., Inc.*, 157 Tex. 351, 298 S.W.2d 79, 81 (1956) ("[T]he duty of this Court [is] to examine and consider *all* of the evidence bearing on the controlling issues, and having done so to decide whether there is evidence of probative value to support the answers made by the jury to the issues.") (quotation omitted) (emphasis added), *and Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914) ("[W]e must reject all evidence favorable to the plaintiffs in error, and consider only the facts and circumstances which tend to sustain the verdict.... In considering this question, we must take into account all of the facts and circumstances attending the transaction.").

10. *See, e.g.,* W. Wendell Hall, *Standards of Review in Texas*, 34 ST. MARY'S L.J. 1, 159–62 (2002); William V. Dorsaneo, III, *Judges, Juries, & Reviewing Courts*, 53 SMU L.R. 1497, 1498, 1507–11 (2000); Phil Hardberger, *Juries Under Siege*, 30 ST. MARY'S L.J. 1, 40–41 (1998). *But see* William Powers, Jr.,

important issue is dispositive here, we address it in some detail, and reserve for another day the City's arguments that a governmental entity cannot be liable for approving a developer's plans, or accepting rather than constructing the works at issue.

## II. Contrary Evidence That Cannot Be Disregarded

The question presented here is not a new one. More than 40 years ago, then Justice Calvert [11] addressed the standards for reviewing legal and factual sufficiency in the most-cited law review article in Texas legal history.[12] Frustrated that despite this Court's efforts to explain those standards "a growing number of recent decisions indicate a continuing misunderstanding," [13] the author summarized and attempted to clarify Texas law up to 1960.[14] The article's impact remains substantial today, having been cited more than 100 times by Texas courts in the last five years.

According to the article:

"No evidence" points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.[15]

We have quoted a similar formulation on many occasions.[16]

Notably, Justice Calvert then proceeded to put the question before us in the proper context:

It is in deciding "no evidence" points in situation (c) that the courts follow the further rule of viewing the evidence in its most favorable light in support of the finding of the vital fact, considering only the evidence and the inferences which support the finding and rejecting the evidence and the inferences which are contrary to the finding.[17]

■ Clearly, the traditional rule in Texas has never been that appellate courts must reject contrary evidence in every no-evidence review. Instead, the traditional scope of review does not disregard contrary evidence if there is no favorable evi-

*Judge & Jury in the Texas Supreme Court*, 75 Tex. L.Rev. 1699, 1699–1700, 1704–19 (1997) (concluding the Court is not changing the no-evidence standard of review but is moving away from broad definitions of duty and toward particularized definitions of duty).

11. Robert W. Calvert was an associate justice of this Court from 1950 to 1960, and Chief Justice from 1961 to 1972.

12. Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361 (1960).

13. *Id.* at 361.

14. "Most of what has been said here is repetitious of what has been said before in the cited cases and articles. The purpose of the writer here has been to try to bring former writings on the subject into compact form and under somewhat closer analysis." *Id.* at 371.

15. *Id.* at 362–63.

16. *See, e.g., King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.2003) (per curiam); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998); *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex.1998); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 795 n. 3 (Tex.1991); *Cecil v. Smith*, 804 S.W.2d 509, 510 n. 2 (Tex.1991); *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990).

17. Calvert, *supra* note 12, at 364.

dence (situation (a) above), or if contrary evidence renders supporting evidence incompetent (situation (b) above) or conclusively establishes the opposite (situation (d) above).

As the following examples show, this has remained the rule since. We do not presume to categorize all circumstances in which contrary evidence must be considered in a legal sufficiency review. Evidence can be disregarded whenever reasonable jurors could do so,[18] an inquiry that is necessarily fact-specific. But it is important that when courts use the exclusive standard and disregard contrary evidence, they must recognize certain exceptions to it.

### A. Contextual Evidence

In Justice Calvert's first situation—a complete absence of evidence of a vital fact—it is generally irrelevant whether a reviewing court considers contrary evidence.[19] If supporting evidence is absent, opposing evidence cannot change that result. But in a number of cases, the lack of supporting evidence may not appear until all the evidence is reviewed in context.

For example, publications alleged to be defamatory must be viewed as a whole—including accompanying statements, headlines, pictures, and the general tenor and reputation of the source itself.[20] A court reviewing legal sufficiency cannot disregard parts of a publication, considering only false statements to support a plaintiff's verdict or only true ones to support a defense verdict.[21]

Similarly, reviewing courts must construe contracts as a whole; we do not consider only the parts favoring one party and disregard the remainder, as that would render the latter meaningless.[22] Even writings executed at different times must be considered together if they pertain to the same transaction.[23]

It is not just writings that reviewing courts must consider in context. For example, in reviewing intentional infliction of emotional distress claims for legal sufficiency, "we consider the context and the relationship between the parties."[24] Acts that might constitute outrageous conduct when dealing with a hearing-impaired consumer[25] may be legally insufficient be-

---

18. See In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002); Uniroyal, 977 S.W.2d at 340; Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 443, 446 (Tex.1982).

19. Calvert, supra note 12, at 364 ("If there is an absolute absence of evidence of a vital fact … an appellate court has no occasion to concern itself with an abstract rule such as how minds of reasonable men might view the situation.").

20. New Times, Inc. v. Isaacks, 146 S.W.3d 144, 158–59 (Tex.2004); Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex.2000); Guisti v. Galveston Tribune, 105 Tex. 497, 150 S.W. 874, 877–78 (1912).

21. Bentley v. Bunton, 94 S.W.3d 561, 581 (Tex.2002) (considering remarks in context of series of talk-show programs); Turner, 38 S.W.3d at 115 (holding defamation includes

story in which details are right but gist is wrong).

22. Shell Oil Co. v. Khan, 138 S.W.3d 288, 292 (Tex.2004).

23. DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex.1999).

24. Tiller v. McLure, 121 S.W.3d 709, 714 (Tex. 2003) (per curiam); see also Tex. Farm Bureau Mut. Ins. Cos. v. Sears, 84 S.W.3d 604, 610–11 (Tex.2002); GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612 (Tex.1999).

25. See George Grubbs Enters., Inc. v. Bien, 881 S.W.2d 843, 852–53 (Tex.App.-Fort Worth 1994) (holding that efforts to pressure deaf-mute consumer to buy car were legally sufficient evidence of intentional infliction), rev'd on other grounds, 900 S.W.2d 337, 338 (Tex. 1995).

tween business parties.[26] In our no-evidence reviews of successful claims, we have invariably reviewed not just evidence showing the conduct was outrageous, but also evidence showing that, in context, it was not.[27]

More generally, evidence cannot be taken out of context in a way that makes it seem to support a verdict when in fact it never did.[28] If a witness's statement "I did not do that" is contrary to the jury's verdict, a reviewing court may need to disregard the whole statement, but cannot rewrite it by disregarding the middle word alone.

Thus, if evidence may be legally sufficient in one context but insufficient in another, the context cannot be disregarded even if that means rendering judgment contrary to the jury's verdict. Either "evidence contrary to the verdict" must be defined to exclude material contextual evidence, or it must be an exception to the general rule.

## B. Competency Evidence

It has long been the rule in Texas that incompetent evidence is legally insufficient to support a judgment, even if admitted without objection.[29] Thus, evidence showing it to be incompetent cannot be disregarded, even if the result is contrary to the verdict. If the rule were otherwise, incompetent evidence would *always* be legally sufficient, because the evidence showing it to be incompetent could never be considered.

Thus, for example, if an eyewitness's location renders a clear view of an accident "physically impossible," it is no evidence of what occurred, even if the eyewitness thinks otherwise.[30] Similarly, an employee's testimony that he was in the course and scope of his employment is legally insufficient to support a verdict against his employer if the evidence shows that legal conclusion to be incompetent.[31]

This exception frequently applies to expert testimony. When expert testimony is required, lay evidence supporting liability is legally insufficient.[32] In

26. *See Tiller*, 121 S.W.3d at 714 (holding efforts to pressure widow of contracting party to complete project were legally insufficient evidence of intentional infliction).

27. *See, e.g., id.* at 713–14 (discussing contrary evidence showing defendant's reasonable concerns about timeliness of plaintiff's work); *Sears*, 84 S.W.3d at 612 (discussing contrary evidence that defendant believed claimant was involved in suspicious dealings).

28. *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 684, 685 (Tex.2004) (holding no evidence supported defect as comments from deposition "were read out of context").

29. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 n. 1 (Tex. 2004) (citing *Henry v. Phillips*, 105 Tex. 459, 151 S.W. 533, 538 (1912)). This rule was changed for hearsay evidence in 1983. *See* TEX.R. EVID. 802 ("Inadmissible hearsay ad-

mitted without objection shall not be denied probative value merely because it is hearsay.").

30. *Tex. & P. Ry. Co. v. Ball*, 96 Tex. 622, 75 S.W. 4, 6 (1903).

31. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 579 (Tex.2002) (holding defamation was not in course and scope of employment as duties required employee to cooperate in investigation but not to lie); *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 360 (Tex.1971) (holding truck driver was not in course of employment during social visit to his father).

32. *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782–83 (1949) (affirming directed verdict against malpractice claim as inadequate expert testimony from doctor of same school or practice as defendant rendered proof legally insufficient).

such cases, a no-evidence review cannot disregard contrary evidence showing the witness was unqualified to give an opinion.[33] And if an expert's opinion is based on certain assumptions about the facts, we cannot disregard evidence showing those assumptions were unfounded.[34]

■ After we adopted gate-keeping standards for expert testimony,[35] evidence that failed to meet reliability standards was rendered not only inadmissible but incompetent as well.[36] Thus, an appellate court conducting a no-evidence review cannot consider only an expert's bare opinion, but must also consider contrary evidence showing it has no scientific basis.[37] Similarly, review of an expert's damage estimates cannot disregard the expert's admission on cross-examination that none can be verified.[38]

■ Thus, evidence that might be "some evidence" when considered in isolation is nevertheless rendered "no evidence" when contrary evidence shows it to be incompetent. Again, such evidence cannot be disregarded; it must be an exception either to the exclusive standard of review or to the definition of contrary evidence.

## C. Circumstantial Equal Evidence

As noted above, Justice Calvert believed the exclusive standard applied only when a no-evidence challenge asserted the evidence was no more than a scintilla.[39] But he went on to note a "variation" that required contrary inferences to be considered when the equal-inference rule applied.[40]

■ In claims or defenses supported only by meager circumstantial evidence, the evidence does not rise above a scintilla (and thus is legally insufficient) if jurors would have to guess whether a vital fact exists.[41] "When the circumstances are equally consistent with either of two facts, neither fact may be inferred."[42] In such cases, we must "view each piece of circum-

---

33. *See Leitch v. Hornsby,* 935 S.W.2d 114, 119 (Tex.1996).

34. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499–500 (Tex.1995) (holding opinion that spray caused frostbite was legally insufficient as it assumed absence of redness when plaintiff admitted the contrary); *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982) (holding opinion that physician should have warned of possible skull fracture was legally insufficient as it assumed physician was aware of fracture when there was no proof he was).

35. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995) (adopting reasoning of *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

36. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 714, 720 (Tex.1997).

37. *Id.* at 711, 724–30.

38. *Kerr–McGee Corp. v. Helton,* 133 S.W.3d 245, 254–57 (Tex.2004).

39. Calvert, *supra* note 12, at 364.

40. *Id.* at 364–65.

41. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004) (holding evidence that truck caught fire unaccompanied by proof identifying any defect did not exceed a scintilla, as jurors would have to guess cause); *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 729 (Tex.2003) (per curiam); *Hammerly Oaks, Inc. v. Edwards,* 958 S.W.2d 387, 392 (Tex. 1997); *W. Tel. Corp. v. McCann,* 128 Tex. 582, 99 S.W.2d 895, 900 (Tex.1937); Calvert, *supra* note 12, at 365.

42. *Tubelite, a Div. of Indal, Inc. v. Risica & Sons, Inc.,* 819 S.W.2d 801, 805 (Tex.1991); *see also Litton Indus. Prods., Inc. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984) (citing *Tex. Sling Co. v. Emanuel,* 431 S.W.2d 538, 541 (Tex.1968)).

stantial evidence, not in isolation, but in light of all the known circumstances." [43]

Justice Calvert argued there was "no necessity for the variation" because drawing an inference based on meager evidence was unreasonable whether or not the reviewing court considered the opposing inferences.[44] Nevertheless, he recognized that "[t]he opposing inference is present and it does no harm to note its presence." [45]

In subsequent cases this Court has continued to note rather than disregard the presence of equal but opposite inferences, often because lower courts have overlooked them. Thus, for example, one might infer from cart tracks in spilled macaroni salad that it had been on the floor a long time, but one might also infer the opposite—that a sloppy shopper recently did both.[46] Similarly, when injury or death occurs without eyewitnesses and only meager circumstantial evidence suggests what happened, we cannot disregard other meager evidence of equally likely causes.[47]

Thus, when the circumstantial evidence of a vital fact is meager, a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well.

### D. Conclusive Evidence

Next, Justice Calvert noted that Texas courts conducting a no-evidence review traditionally do not disregard contrary evidence that conclusively establishes the opposite of a vital fact.[48] He argued that this is to some extent not a "true" no-evidence claim, as proponents may have to show not only that no evidence supports the verdict but that the opposite was proved as a matter of law.[49] There are several types of conclusive evidence. First, an appellate court conducting a legal sufficiency review cannot "disregard undisputed evidence that allows of only one logical inference." [50] By definition, such evidence can be viewed in only one light, and reasonable jurors can reach only one conclusion from it. Jurors are not free to reach a verdict contrary to such evidence;[51] indeed, uncontroverted issues

43. *Lozano,* 52 S.W.3d at 167.

44. Calvert, *supra* note 12, at 365.

45. *Id.*

46. *Wal-Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 938 (Tex.1998).

47. *See Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 729 (Tex.2003) (per curiam); *McCann,* 99 S.W.2d at 900.

48. Calvert, *supra* note 12, at 363–64. But other commentators disagree. *See* Powers, *supra* note 10, at 1703–10. We have held that a "conclusively and as a matter of law" point may be asserted under a "no evidence" point. *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112, 113 (Tex.1976). And the cases in this section note that conclusive proof is often asserted by parties that do *not* carry the burden of proof. *See also Dow Chem. Co. v. Francis,* 46 S.W.3d

237, 241 (Tex.2001) (per curiam) (court must first examine record for evidence supporting verdict, ignoring all evidence to the contrary; if there is no such evidence, the court then examines the entire record to see if the contrary finding is established as a matter of law).

49. Calvert, *supra* note 12, at 363–64. *But see, e.g., Cecil v. Smith,* 804 S.W.2d 509, 510 n. 2 (Tex.1991) ("Cecil's points that (1) there was no evidence to support the findings and (2) the contrary of each finding was established as a matter of law will hereinafter collectively be referred to as her "no evidence" points.").

50. *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 519–20 (Tex.2002) (plurality op.) (quoting *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 51 n. 1 (Tex.1997)).

51. *Tex. & N.O.R Co. v. Burden,* 146 Tex. 109, 203 S.W.2d 522, 528, 530 (1947); *see also*

need not be submitted to a jury at all.[52]

Reviewing legal sufficiency in such cases encompasses a general no-evidence review, because if some evidence supports the verdict then the contrary evidence was not "undisputed." But the review does not stop there; the evidence must also have only one logical inference. Undisputed evidence that reasonable jurors could disbelieve has two: (1) it is true, or (2) it is not.

■ Most often, undisputed contrary evidence becomes conclusive (and thus cannot be disregarded) when it concerns physical facts that cannot be denied. Thus, no evidence supports an impaired-access claim if it is undisputed that access remains along 90 percent of a tract's frontage.[53] Evidence that a buyer believed a product had been repaired is conclusively negated by an accompanying letter to the contrary.[54] And an insured's liability has not been determined by an "actual trial" if the insured did not appear, present evi-

dence, or challenge anything presented by his opponent.[55]

■ Undisputed contrary evidence may also become conclusive when a party admits it is true. Thus, a claimant's admission that he was aware of a dangerous premises condition is conclusive evidence he needed no warning about it.[56] Similarly, an ex-employee's admission that she obtained other employment may prove conclusively that she did not detrimentally rely on a defendant's promise to re-hire her.[57] And jurors may not find that an indictment was based on a defendant's misleading report when the district attorney admits it was his own mistake.[58]

■ It is impossible to define precisely when undisputed evidence becomes conclusive. For example, an injured employee's return to work may prove conclusively that an injury was not total,[59] or it may not.[60] Circumstances in which a body is found may conclusively establish suicide,[61] or al-

*Prudential Ins. Co. of Am. v. Krayer,* 366 S.W.2d 779, 783 (Tex.1963) (finding evidence of suicide undisputed after disregarding disputed portion of facts).

52. *Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex.1971); *Wright v. Vernon Compress Co.,* 156 Tex. 474, 296 S.W.2d 517, 523 (1956) ("[T]he trial court is required to submit only controverted issues. No jury finding is necessary to establish undisputed facts."); *Clark v. Nat'l Life & Accident Ins. Co.,* 145 Tex. 575, 200 S.W.2d 820, 822 (1947) ("Uncontroverted questions of fact need not be and should not be submitted to the jury for its determination."); *S. Underwriters v. Wheeler,* 132 Tex. 350, 123 S.W.2d 340, 341 (Tex.1939).

53. *County of Bexar v. Santikos,* 144 S.W.3d 455, 460–61 (Tex.2004).

54. *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 97–98 (Tex.2004).

55. *State Farm Lloyds Ins. Co. v. Maldonado,* 963 S.W.2d 38, 40 (Tex.1998).

56. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709–10 (Tex.2003) (per curiam).

57. See *Johnson & Johnson Med., Inc. v. Sanchez,* 924 S.W.2d 925, 930 (Tex.1996).

58. *King v. Graham,* 126 S.W.3d 75, 78–79 (Tex.2003) (per curiam) (holding no evidence supported malicious prosecution claim as district attorney admitted prosecution was due to item he overlooked rather than any false statements by defendants).

59. *Travelers Ins. Co. v. Seabolt,* 361 S.W.2d 204, 206 (Tex.1962) (return to regular job in which use of hand was required conclusively established claimant did not suffer total loss of use).

60. *Navarette v. Temple Indep. Sch. Dist.,* 706 S.W.2d 308, 309–10 (Tex.1986) (return to work did not conclusively establish injury was not total as claimant could not do regular work and employer voluntarily accommodated her with lesser duties).

61. See, e.g., *Prudential Ins. Co. of Am. v. Krayer,* 366 S.W.2d 779, 783 (Tex.1963).

low jurors to infer otherwise.[62] Evidence is conclusive only if reasonable people could not differ in their conclusions,[63] a matter that depends on the facts of each case.

■■■ There is another category of conclusive evidence, in which the evidence *is* disputed. Undisputed evidence and conclusive evidence are not the same—undisputed evidence may or may not be conclusive, and conclusive evidence may or may not be undisputed.

Thus, for example, in *Murdock v. Murdock,* we found no evidence to support a verdict establishing the defendant's paternity when blood tests conclusively proved he was not the child's father.[64] The evidence was directly disputed—the child's mother testified she had conjugal relations with no one else during the relevant time.[65] Nevertheless, we held there was no evidence to support the paternity verdict because of conclusive evidence to the contrary.[66]

Similarly, in *Texas & New Orleans Railroad Co. v. Compton,* we found no evidence that a railroad's negligence caused an automobile to slam into the sixtieth car of a slow-moving train.[67] Again, the evidence was hotly disputed—while railroad witnesses testified that warning signs were in place at the crossing, the car's driver and a passenger testified they saw nothing, and would have been able to stop if they had.[68] Nevertheless, we held there was no evidence to support the claim because, if the driver could not see the side of a train before he hit it, he could not have seen a crossing sign either.[69]

Of course, there are few instances in which disputed evidence is conclusive, and many instances in which undisputed evidence is not. As our sister court has noted, testimony by a paid informant is legally sufficient to support a conviction, even if "[t]wenty nuns testify that the defendant was with them at the time, far from the scene of the crime ... [and] [t]wenty more nuns testify that they saw the informant commit the crime." [70] But a more famous clerical hypothetical by Judge Learned Hand shows the opposite limit:

> If, however, it were proved by twenty bishops that either party, when he used the words [in a contract], intended something else than the usual meaning which the law imposes upon them, he would still be held.... [71]

While jurors may generally believe either sinners or saints, their discretion is limited when it is proved beyond question that an "eyewitness" was actually far away in prison or totally blind on the day of the crime.

■■■ Proper legal-sufficiency review prevents reviewing courts from substitut-

---

62. *See Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 552 (Tex.1976).

63. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 340 (Tex.1998); *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

64. 811 S.W.2d 557, 560 (Tex.1991).

65. *Id.* at 558.

66. *Id.* at 560. In defense of jurors, it should be noted that the trier-of-fact in *Murdock* was a judge.

67. 135 Tex. 7, 136 S.W.2d 1113, 1115 (1940).

68. *Id.*

69. *Id.*

70. *Clewis v. State,* 922 S.W.2d 126, 133 n. 12 (Tex.Crim.App.1996) (en banc) (citation omitted).

71. *Hotchkiss v. Nat'l City Bank,* 200 F. 287, 293 (S.D.N.Y.1911).

ing their opinions on credibility for those of the jurors, but proper review also prevents jurors from substituting their opinions for undisputed truth. When evidence contrary to a verdict is conclusive, it cannot be disregarded.

### E. Clear–and–Convincing Evidence

 Since the time of Justice Calvert's article, new claims and burdens of proof have arisen that require additions to the four types of no-evidence review Justice Calvert considered exhaustive. Beginning with the United States Supreme Court's opinion in *Jackson v. Virginia,* appellate courts have recognized that, while "one slender bit of evidence" may be all a reviewing court needs to affirm a verdict based on the preponderance of the evidence, a higher burden of proof requires a higher standard of review.[72] As we recently stated, the standard for legal sufficiency works in tandem with the standard of review—"whenever the standard of proof at trial is elevated, the standard of appellate review must likewise be elevated."[73] If the rule were otherwise, legally sufficient evidence to support a preponderance-of-the-evidence verdict would satisfy the higher burdens as well, thus rendering their differences meaningless.[74]

Accordingly, we have held that a legal sufficiency review must consider *all* the

evidence (not just that favoring the verdict) in reviewing cases of parental termination,[75] defamation,[76] and punitive damages.[77] In such cases, again, evidence contrary to a verdict cannot be disregarded.

### F. Consciousness Evidence

 Further, we have had to particularize legal-sufficiency review in cases involving what a party knew or why it took a certain course, as they are not amenable to review under the exclusive standard.

Long before gross negligence had to meet a clear-and-convincing burden, we recognized in *Burk Royalty Co. v. Walls* that no-evidence review of such findings had to include "all of the surrounding facts, circumstances, and conditions, not just individual elements or facts."[78] As then Chief Justice Greenhill noted in concurring, speeding and running a red light may not be legally sufficient evidence of gross negligence if one's wife and daughter are bleeding to death in the back seat.[79] Reviewing courts assessing evidence of conscious indifference cannot disregard part of what a party was conscious of.[80]

For the same reasons, the exclusive standard of review has proven problematic in insurance bad-faith cases. Liability in

**72.** 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**73.** *Southwestern Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 627 (Tex.2004).

**74.** Our sister court reviews the legal sufficiency of criminal convictions by considering *"all evidence* which the jury was permitted, whether rightly or wrongly, to consider" in the light most favorable to the prosecution. *Moff v. State,* 131 S.W.3d 485, 488 (Tex.Crim.App. 2004); *see also Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex.Crim.App.2005).

**75.** *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002).

**76.** *Bentley v. Bunton,* 94 S.W.3d 561, 596 (Tex.2002); *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 120 (Tex.2000).

**77.** *Garza,* 164 S.W.3d at 627.

**78.** 616 S.W.2d 911, 922 (Tex.1981).

**79.** *Id.* at 926 (Greenhill, C.J., concurring).

**80.** *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 234–35 (Tex. 2004).

such cases requires proof that the insurer denied coverage after it became reasonably clear.[81] But that standard will always be met if reviewing courts must disregard any evidence that coverage was unclear.[82] Subsequent cases show that reviewing courts are in fact looking at *all* the evidence to determine whether coverage was reasonably clear.[83]

This problem arises in other contexts as well. In discrimination cases, discharged employees will never have to prove that the reason given for termination was a pretext if no-evidence review must disregard that reason.[84] Government officials will never be entitled to immunity if we consider only evidence suggesting they should have acted differently.[85] And limitations will never run under the discovery rule if reviewing courts must disregard all evidence that claimants knew of their claims.[86]

This is not to say a reviewing court may credit a losing party's explanations or excuses if jurors could disregard them. For example, while an insurer's reliance on an expert report may foreclose bad faith recovery,[87] it will not do so if the insurer had some reason to doubt the report.[88] But a reviewing court cannot review whether jurors could reasonably disregard a losing party's explanations or excuses without considering what they were.

## III. Contrary Evidence That Must Be Disregarded

As trials normally focus on issues that jurors could decide either way, reviewing

---

81. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55–56 (Tex.1997).

82. *See id.* at 51 (noting same problem with previous test whether insurer had reasonable basis for denying claim).

83. *See Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262–63 (Tex.2002) (finding no evidence of bad faith based in part on defendant's correspondence showing misunderstanding regarding settlement terms); *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 45 (Tex.1998)(affirming bad-faith verdict after noting that insurer gave contradictory reasons for not interviewing potential arsonists); *Minn. Life Ins. Co. v. Vasquez*, 133 S.W.3d 320, 330 (Tex.App.-Corpus Christi 2004, pet. filed) (finding some evidence of bad faith because, though insurer showed hospital stymied its efforts to obtain records, insurer failed to seek same information from other sources); *Allstate Tex. Lloyds v. Mason*, 123 S.W.3d 690, 704–06 (Tex.App.-Fort Worth 2003, no pet.) (reversing bad-faith verdict for legal insufficiency because insurer reasonably relied on expert report); *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 249–50 (Tex.App.-Austin 2002, pet. granted, judgm't vacated w.r.m.) (affirming bad-faith verdict after reviewing insurer's reasons for delay and insured's responsive evidence); *Oram v. State Farm Lloyds*, 977 S.W.2d 163, 167 (Tex.App.-Austin 1998, no pet.) (reversing bad-faith ver-

dict for legal insufficiency because insurer's interpretation of exclusion was reasonable though incorrect).

84. *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex.2003) (per curiam) (noting liability may be established by proof of discrimination plus proof employer's reason was pretext); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 452 (Tex.1996) (same).

85. *See, e.g., Univ. of Houston v. Clark*, 38 S.W.3d 578, 583 (Tex.2000) (noting good-faith test considers *all* circumstances on which official acted).

86. *See, e.g., PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 94 (Tex.2004) (holding no evidence supported jury verdict applying discovery rule based on contrary evidence that claimant's predecessor knew 3,000 windows had failed).

87. *See, e.g., Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194–95 (Tex.1998) (finding no evidence insurer denied claim in bad faith due to conflicting medical evidence).

88. *See, e.g., State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex.1997) (holding some evidence showed expert report was pretext and thus denial of claim had no reasonable basis).

courts must disregard evidence contrary to the verdict far more often than they must consider it. Just as no-evidence review that starts by disregarding contrary evidence often must end up considering considerably more, no-evidence review that begins by considering all the evidence must usually end up considering considerably less.

Again, we do not presume to categorize all circumstances in which contrary evidence must be disregarded; a few examples serve to demonstrate that even under the inclusive standard, viewing all the evidence in a light favorable to the verdict often requires that much of it be disregarded.

## A. Credibility Evidence

 Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony.[89] They may choose to believe one witness and disbelieve another.[90] Reviewing courts cannot impose their own opinions to the contrary.[91]

 Most credibility questions are implicit rather than explicit in a jury's verdict. Thus, reviewing courts must assume jurors decided all of them in favor of the verdict if reasonable human beings could do so. Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it.[92]

For example, viewing the evidence in the light favorable to the verdict means that if both parties in a traffic accident testify they had the green light, an appellate court must presume the prevailing party did and the losing party did not. If the parties to an oral contract testify to conflicting terms, a reviewing court must presume the terms were those asserted by the winner. When all the evidence is viewed in the light most favorable to the jury verdict, some of it must be completely discounted. Though not disregarded at the outset, the end result is the same.

This has always been our practice in cases using the inclusive scope of review. Thus, we have concluded that a bailee sold cotton without the bailor's consent, despite the former's denials, because the jury verdict favored the latter.[93] And we have affirmed a gross negligence verdict based on testimony that the defendant's speed was 80 miles per hour, without mentioning his own testimony to a speed half that.[94]

 Nor is it necessary to have testimony from both parties before ju-

**89.** *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.2003); *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 28 (Tex.1993); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986); *Edrington v. Kiger*, 4 Tex. 89, 93 (1849).

**90.** *McGalliard*, 722 S.W.2d at 697; *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex.1986); *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561, 563 (1952) (holding it was up to jurors "to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses"); *Houston, E. & W.T. Ry. Co. v. Runnels*, 92 Tex. 305, 47 S.W. 971, 972 (1898).

**91.** *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex.2000).

**92.** *Runnels*, 47 S.W. at 972.

**93.** *Cochran v. Wool Growers Cent. Storage Co.*, 140 Tex. 184, 166 S.W.2d 904, 907 (1942) (noting the Court "read the entire statement of facts").

**94.** *Harbin v. Seale*, 461 S.W.2d 591, 594 (Tex. 1970); *compare Harbin v. Seale*, 454 S.W.2d 271, 272 (Tex.Civ.App.-Dallas 1970) (reporting defendant's testimony that he was traveling only 40 miles per hour), *rev'd*, 461 S.W.2d 591 (Tex.1970).

rors may disbelieve either. Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses.[95] Thus, an architect's uncontradicted testimony that he relied on a 20–year warranty was not binding on jurors when the bid specifications he prepared included only much shorter warranties.[96] Nor was an insured's uncontradicted testimony about lost furnishings binding on jurors when the fire scene contained several indications of arson but few of burnt furniture.[97] Even uncontroverted expert testimony does not bind jurors unless the subject matter is one for experts alone.[98]

 Of course, "[t]he jury's decisions regarding credibility must be reasonable."[99] Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted.[100] And as noted above, they are not free to believe testimony that is conclusively negated by undisputed facts. But whenever reasonable jurors could decide what testimony to discard, a reviewing court must assume they did so in favor of their verdict, and disregard it in the course of legal sufficiency review.

## B. Conflicting Evidence

 It is the province of the jury to resolve conflicts in the evidence.[101] Accordingly, courts reviewing all the evidence in a light favorable to the verdict must assume that jurors resolved all conflicts in accordance with that verdict.[102]

Again, this has always been the case even in those cases using the inclusive scope of review. For example, in such cases we have sometimes detailed only the evidence that supported a jury's fraud finding.[103] We have affirmed a bad-faith verdict for legal sufficiency despite "significant evidence" that the insurer acted in

95. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 653–54 (Tex.1999) (holding evidence allowed jurors to disbelieve defendant's experts' testimony even though plaintiff's expert's testimony was shown to be in error); *Runnels*, 47 S.W. at 972; *Cheatham v. Riddle*, 12 Tex. 112, 118 (1854).

96. *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 100 (Tex. 2004).

97. *Anchor Cas. Co. v. Bowers*, 393 S.W.2d 168, 169–70 (Tex.1965).

98. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex.1998); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986).

99. *Bentley v. Bunton*, 94 S.W.3d 561, 599 (Tex.2002).

100. *See* Tex.R. Civ. P. 166a(c); *Wal–Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 817 (Tex. 2002) (finding no evidence that store knew of puddle based in part on uncontradicted testimony by only employee in the area); *In re Doe 4*, 19 S.W.3d 322, 325 (Tex.2000); *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 574 (Tex.1998) (holding reporter's detailed explanation of foundation of report established lack of malice as matter of law).

101. *See, e.g., Dresser Indus., Inc. v. Lee*, 880 S.W.2d 750, 754 (Tex.1993); *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex.1993); *Biggers v. Cont'l Bus Sys., Inc.*, 157 Tex. 351, 303 S.W.2d 359, 365 (1957); *Howard Oil Co. v. Davis*, 76 Tex. 630, 13 S.W. 665, 667 (1890) (holding reviewing court must uphold jury verdict despite strong evidence to the contrary if evidence is conflicting).

102. *See, e.g., Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 (Tex.1999); *Caller–Times Publ'g Co. v. Triad Communications, Inc.*, 826 S.W.2d 576, 580 (Tex.1992); *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex. 1966).

103. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48–49 (Tex.1998).

good faith.[104] We have found some evidence of lost profits, even though income tax returns showed the contrary.[105] And we have affirmed a jury's negligence finding despite a defendant's evidence asserting it could not have prevented the accident.[106]

In none of these cases did we state that the scope of review required us to disregard evidence contrary to the verdict; instead, we started by considering the entire record in each. But in each case we either discounted or never mentioned conflicting evidence contrary to the verdict because viewing the evidence in the light favorable to the verdict required us to do so.

Of course, it is not always clear whether evidence is conflicting. Evidence is not conflicting just because the parties cannot agree to it. For example, evidence that a hospital controlled a doctor's rotation and patient assignments raises no material conflict with evidence that a different entity controlled the details of medical treatment, as only the latter is material in a malpractice case.[107] Similarly, evidence showing the terms of one loan does not conflict with undisputed evidence that the parties never reached an agreement regarding the terms of another.[108]

█ But in every circumstance in which reasonable jurors could resolve conflicting evidence either way, reviewing courts must presume they did so in favor of the prevailing party, and disregard the conflicting evidence in their legal sufficiency review.

## C. Conflicting Inferences

█ Even if evidence is undisputed, it is the province of the jury to draw from it whatever inferences they wish, so long as more than one is possible and the jury must not simply guess. Thus, in product liability cases jurors may find evidence of a defect from subsequent modifications, even if there were plenty of other reasons for the changes.[109] Even if a defendant admits approaching an intersection from the wrong way on a one-way street, jurors may infer the plaintiff failed to keep a proper lookout, as that is one possible inference from the accident itself.[110] Similarly, jurors may infer that relatives tore down posters of a missing child to assist the child's father, even though another inference was that the signs simply embarrassed them.[111]

█ Accordingly, courts reviewing all the evidence in a light favorable to the verdict must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review.

## IV. Reconciling the Standards

█ Having noted the dual lines of authority stating the scope of no-evidence review, and the proper application and exceptions to each, we turn to the question of which one is correct. For the reasons

104. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 286 (Tex.1998).

105. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262–63 (Tex.1983).

106. *Hall v. Med. Bldg. of Houston,* 151 Tex. 425, 251 S.W.2d 497, 502 (1952).

107. *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 542–43 (Tex.2002) (plurality op.).

108. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992).

109. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 341–42 (Tex.1998).

110. *De Winne v. Allen,* 154 Tex. 316, 277 S.W.2d 95, 98–99 (1955).

111. *Lozano v. Lozano,* 52 S.W.3d 141, 144 (Tex.2001) (per curiam); *id.* at 162–63 (Hecht, J., concurring and dissenting).

discussed below, we believe the answer is both.

## A. Goals: The Standards Must Be The Same

■ Whether a court begins by reviewing all the evidence or disregarding part in a legal-sufficiency review, there can be no disagreement about where that review should end. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so.[112] A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement.[113]

■ Similarly, there is no disagreement about how a reviewing court should view evidence in the process of that review. Whether a reviewing court starts with all or only part of the record, the court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would sup-

port it.[114] But if the evidence allows of only one inference, neither jurors nor the reviewing court may disregard it.[115]

Given these premises, it is no coincidence that the two standards should reach the same result—indeed they *must*. Any scope of appellate review smaller than what reasonable jurors could believe will reverse some verdicts that are perfectly reasonable; any scope of review larger than what reasonable jurors could believe will affirm some verdicts that are not.

■ Further, the two must coincide if this Court is to perform its constitutional duties. Although factual sufficiency has been the sole domain of the intermediate appellate courts in Texas since 1891, our jurisdiction has always included legal sufficiency, as that is a question of law, not of fact.[116] Construing either standard to require us to do less would be just as unconstitutional as construing either to allow us to do more.

This is not to say judges and lawyers will always agree whether evidence is le-

---

**112.** *See Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 552 (Tex.2004); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex.2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922 (Tex.1998); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994); *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 297 (Tex.1983) (per curiam).

**113.** *See* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" & "Insufficient Evidence,"* 69 Tex. L.R. 515, 517–20 (1991).

**114.** *Gragg*, 151 S.W.3d at 552; *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex.2002) (plurality op.); *Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998)

(per curiam); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *Havner*, 953 S.W.2d at 711; *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 75 (Tex.1997) (Hecht, J., concurring); *Preferred Heating & Air Conditioning Co. v. Shelby*, 778 S.W.2d 67, 68 (Tex. 1989) (per curiam); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981); *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970); *W. Tel. Corp. v. McCann*, 128 Tex. 582, 99 S.W.2d 895, 898 (Tex.1937).

**115.** *See St. Joseph Hosp.*, 94 S.W.3d at 519–20 (Tex.2002) (plurality op.); *Giles*, 950 S.W.2d at 51 n. 1 (citing *Wininger v. Ft. Worth & D.C. Ry. Co.*, 105 Tex. 56, 143 S.W. 1150, 1152 (1912) and *Tex. & N.O. Ry. Co. v. Rooks*, 293 S.W. 554, 556–57 (Tex.Comm'n.App.1927)).

**116.** *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 620 (Tex.2004) (citing *Choate v. San Antonio & A.P. Ry.*, 91 Tex. 406, 44 S.W. 69, 69 (1898); *Muhle v. N.Y., T. & M. Ry.*, 86 Tex. 459, 25 S.W. 607, 608 (1894)).

gally sufficient. As discussed more fully below, reasonable people may disagree about what reasonable jurors could or must believe. But once those boundaries are settled, *any* standard of review must coincide with those boundaries—affirming jury verdicts based on evidence within them and reversing jury verdicts based on evidence that is not. Any standard that does otherwise is improperly applied.

## B. Other Motions: The Standards Must Be The Same

■■■ Just as the scope of no-evidence review must coincide with its goals, the scope of review should not depend upon the motion in which it is asserted. Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide otherwise. Accordingly, the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review.

Our statements of the standard for reviewing a directed verdict present the same mixed bag found with general no-evidence review. We have most often used the exclusive standard, stating that courts reviewing directed verdicts must consider only evidence supporting the non-movant's case and disregard all contrary evidence.[117] But we have also stated that reviewing courts should use the inclusive standard, considering all the evidence in a light contrary to the directed verdict.[118] And we have sometimes stated both, requiring reviewing courts to consider all the evidence in a light contrary to the directed verdict and then to disregard all conflicting evidence that supports it.[119]

By contrast, cases concerning judgments non obstante veredicto most often utilize the inclusive scope of review. Beginning with the 1931 amendment authorizing trial judges to grant them,[120] we have generally reviewed such orders by considering all the evidence in a light favorable to the

**117.** *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex.2004); *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex.1988); *Hart v. Van Zandt*, 399 S.W.2d 791, 793 (Tex.1965); *Triangle Motors v. Richmond*, 152 Tex. 354, 258 S.W.2d 60, 61 (1953); *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561, 562 (1952); *Anglin v. Cisco Mortgage Loan Co.*, 135 Tex. 188, 141 S.W.2d 935, 938 (1940).

**118.** *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 684 (Tex.2004); *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex.1996); *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984); *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 753 (Tex. 1970); *Dunagan v. Bushey*, 152 Tex. 630, 263 S.W.2d 148, 153 (1953); *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 258 (1951); *Kelly v. McKay*, 149 Tex. 343, 233 S.W.2d 121, 122 (1950); *White v. White*, 141 Tex. 328, 172 S.W.2d 295, 296 (1943); *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 153 S.W.2d 442, 445

(1941); *Wellington Oil Co. v. Maffi*, 136 Tex. 201, 150 S.W.2d 60, 61 (1941); *Chicago, R.I. & G. Ry. Co. v. Carter*, 261 S.W. 135, 135 (Tex.Com.App.1924, judgm't adopted); *Charles v. El Paso Elec. Ry. Co.*, 254 S.W. 1094, 1094–95 (Tex.Com.App.1923, holding approved, judgm't adopted).

**119.** *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994) (per curiam); *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 483 (Tex. 1984); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983); *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex.1982); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978); *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex.1976); *Jones v. Nafco Oil & Gas, Inc.*, 380 S.W.2d 570, 574 (Tex. 1964).

**120.** Act of April 25, 1931, 42d Leg., R.S., ch. 77, § 1, 1931 Tex. Gen. Laws 119; *Myers v. Crenshaw*, 134 Tex. 500, 137 S.W.2d 7, 13 (Tex.1940); *Hines v. Parks*, 128 Tex. 289, 96

verdict that was set aside.[121] In later years we have sometimes adopted the exclusive standard,[122] but our opinions doing so usually cite to general no-evidence cases in which no judgment n.o.v. was involved.[123]

The one exception in which both standards do not expressly appear is in the scope of review for summary judgments. Here, there is only one standard—a reviewing court must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.[124] Reviewing courts do *not* disregard the evidence supporting the mo-

S.W.2d 970, 971 (Tex.1936). *Cf. Deal v. Craven,* 277 S.W. 1046, 1047 (Tex.Com.App.1925, judgm't adopted) ("It has long been settled in this state that the judgment must follow the verdict, and that the courts are without power to enter a judgment notwithstanding a verdict upon a material issue.").

**121.** *Brown v. Bank of Galveston, Nat'l Ass'n,* 963 S.W.2d 511, 513 (Tex.1998) ("[W]e consider the evidence in the light most favorable to the verdict and reasonable inferences that tend to support it."); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 931 (Tex.1983) ("In acting on the motion [for judgment notwithstanding the verdict], *all* testimony must be viewed in a light most favorable to the party against whom the motion is sought, and every reasonable intendment deducible from the evidence is to be indulged in that party's favor.") (emphasis added); *Dowling v. NADW Mktg., Inc.,* 631 S.W.2d 726, 728 (Tex.1982) (same); *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 777 (Tex.1974) (same); *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 550 (1962) (same); *Houston Fire & Cas. Ins. Co. v. Walker,* 152 Tex. 503, 260 S.W.2d 600, 603–04 (1953) (affirming trial court's implied disregard of one jury answer based on "consideration of the transcript as a whole"); *Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194, 199 (1952) ("[W]e must consider *all the testimony in the record* from the standpoint most favorable to the plaintiff.") (emphasis added); *Neyland v. Brown,* 141 Tex. 253, 170 S.W.2d 207, 211 (Tex.1943) (considering judgment non obstante veredicto "in the light of the record as a whole"); *Le Master v. Fort Worth Transit Co.,* 138 Tex. 512, 160 S.W.2d 224, 225 (1942) ("[W]e must view LeMaster's testimony, *as well as all other testimony in the record,* from a standpoint most favorable to him.") (emphasis added); *McAfee v. Travis Gas Corp.,* 137 Tex. 314, 153 S.W.2d 442, 445 (1941) ("[W]e must regard the evidence contained in this record in its most favorable light for McAfee ... because of the instructed verdict

and judgment non obstante veredicto."); *see also Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 424–29 (Tex.2004) (upholding judgment non obstante veredicto based on conclusive evidence contrary to verdict).

**122.** *See Tiller v. McLure,* 121 S.W.3d 709, 713 (Tex.2003) (per curiam); *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003) (per curiam); *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex. 1990) (per curiam); *Navarette v. Temple Indep. Sch. Dist.,* 706 S.W.2d 308, 309 (Tex. 1986); *Tomlinson v. Jones,* 677 S.W.2d 490, 492 (Tex.1984); *Williams v. Bennett,* 610 S.W.2d 144, 145 (Tex.1980); *Freeman v. Tex. Comp. Ins. Co.,* 603 S.W.2d 186, 191 (Tex. 1980); *Dodd v. Tex. Farm Prods. Co.,* 576 S.W.2d 812, 814–15 (Tex.1979); *Campbell v. Northwestern Nat'l Life Ins. Co.,* 573 S.W.2d 496, 497 (Tex.1978); *Miller v. Bock Laundry Mach. Co.,* 568 S.W.2d 648, 650 (Tex.1977); *Sobel v. Jenkins,* 477 S.W.2d 863, 865 (Tex. 1972); *C. & R. Transp., Inc. v. Campbell,* 406 S.W.2d 191, 193 (Tex.1966).

**123.** *See Tiller,* 121 S.W.3d at 713 (citing *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001)); *Miller,* 102 S.W.3d at 709 (same); *Best,* 786 S.W.2d at 671 (citing *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985)); *Tomlinson,* 677 S.W.2d at 492 (citing *Glover v. Tex. Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981)); *Campbell,* 573 S.W.2d at 497 (citing *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263, 265 (Tex.1974)); *Campbell,* 406 S.W.2d at 193 (citing *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696, 697–98 (1914)).

**124.** *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex. 2004); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003); *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d

tion; if they did, all summary judgments would be reversed.

In practice, however, a different scope of review applies when a summary judgment motion is filed without supporting evidence.[125] In such cases, evidence supporting the motion is effectively disregarded because there is none; under the rule, it is not allowed. Thus, although a reviewing court must consider all the summary judgment evidence on file, in some cases that review will effectively be restricted to the evidence contrary to the motion.

The standards for taking any case from the jury should be the same, no matter what motion is used. If only one standard were proper, we would not expect both to appear in cases reviewing directed verdicts, judgments notwithstanding the verdict, and summary judgments. But both do.

## C. Federal Courts: The Standards Are The Same

The federal courts have had a similar split of authority between the inclusive and exclusive standards for scope of review. But no longer—the United States Supreme Court recently concluded in *Reeves v. Sanderson Plumbing Products, Inc.* that the two tests are the same.[126]

Under Rule 50 of the federal rules of procedure, a court should render judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." [127] In deciding whether all or only part of the evidence should be considered, the Supreme Court stated:

The Courts of Appeals have articulated differing formulations as to what evidence a court is to consider in ruling on a Rule 50 motion. Some decisions have stated that review is limited to that evidence favorable to the nonmoving party, while most have held that review extends to the entire record, drawing all reasonable inferences in favor of the nonmovant.

On closer examination, this conflict seems more semantic than real. Those decisions holding that review under Rule 50 should be limited to evidence favorable to the nonmovant appear to have their genesis in *Wilkerson v. McCarthy* [128]. In *Wilkerson,* we stated that "in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of" the nonmoving party.[129] But subsequent decisions have clarified that this passage was referring to the evidence to which the trial court should *give credence,* not the evidence that the court should *review.* In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." And the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." It therefore follows that, in entertaining a motion for judgment as a

502, 506 (Tex.2002); *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 736 (Tex.1990); *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984).

125. *See* Tex.R. Civ. P. 166a(i).

126. 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

127. Fed.R.Civ.P. 50(a)(1).

128. 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497 (1949).

129. *Id.* at 57, 69 S.Ct. 413.

matter of law, the court should review all of the evidence in the record.[130]

We address the Supreme Court's conclusion as to the most appropriate standard below; the relevant point here is its conclusion that differences between the inclusive and exclusive standards are more semantic than real.

### D. Objections: The Standards Are Not The Same

While we have used the two standards for the scope of review interchangeably for many years in many different contexts, several arguments suggest they are not the same.

First, the courts of appeals often use the two standards in illustrations of the difference between legal and factual sufficiency, with the exclusive standard tied to the former and the inclusive standard to the latter:

> When [reviewing] legal sufficiency, we consider *only* the evidence and inferences that tend to support the award of damages and disregard all evidence and inferences to the contrary.... When we review factual sufficiency, we consider and weigh *all* of the evidence and will set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.[131]

But there have always been exceptions to this distinction.[132] As demonstrated in Parts II and III above, it is generally true that the *result* of legal-sufficiency review is to disregard contrary evidence, but there are exceptions when a reviewing court cannot. It is not surprising that in drawing the general distinction between legal and factual sufficiency, courts have not complicated that distinction by listing the several exceptions in which the scope of review—though not the standard of review—may overlap.

Second, it has been argued that the exclusive standard "is an important prophylactic" against invasion of the jury's province, as appellate judges are less likely to consider contrary evidence when they should not if the exclusive standard is used.[133] But if that is true, the opposite should also be the case—appellate courts are less likely to consider contrary evidence *when they must* (as shown in Part II) if the exclusive standard is used. No matter which standard is used, appellate courts must take care not to consider or disregard too little or too much.

130. *Reeves*, 530 U.S. at 149–50, 120 S.Ct. 2097 (citations omitted).

131. *Carter v. Steverson & Co.*, 106 S.W.3d 161, 166 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (emphasis added) (citation omitted); *accord Long v. Long*, 144 S.W.3d 64, 67 (Tex. App.-El Paso 2004, no pet.); *Gore v. Scotland Golf, Inc.*, 136 S.W.3d 26, 29 (Tex.App.-San Antonio 2003, pet. denied); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex.App.-Dallas 2002, pet. denied); *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 113 n. 3 (Tex.App.-Beaumont 2001, pet. denied); *Molina v. Moore*, 33 S.W.3d 323, 329 (Tex.App.-Amarillo 2000, no pet.); *Wal–Mart Stores, Inc. v. Itz*, 21 S.W.3d 456, 470 n. 3 (Tex.App.-Austin 2000, pet. denied); *see also In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam) (holding court of appeals erred in failing to distinguish between legal and factual sufficiency review by not weighing all the evidence when conducting the latter).

132. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981) (noting that review of gross negligence finding by considering all the evidence appeared to but did not conflict with traditional no-evidence test).

133. Dorsaneo, *supra* note 10, at 1503; *see also* Hardberger, *supra* note 10, at 17 (arguing exclusive standard is "designed to afford high deference to jury verdicts").

Conversely, several factors appear to favor application of the inclusive standard. First, when we have said "we must look only at that evidence which tends to support the judgment," [134] we could not have been speaking literally; no glasses filter evidence, and judges cannot abandon such judgments to law clerks or litigants. It is often hard to say whether evidence does or does not support a verdict—the same facts may support different conclusions,[135] or may support one part of a verdict but not another.[136] Nor can evidence supporting a verdict be identified by which party offered it—parties depend on admissions and cross-examination during their opponent's case, and minimize damaging evidence by presenting it during their own. As a practical matter, a court cannot begin to say what evidence supports a verdict without reviewing it all.

Second, an appellate court that begins by disregarding one party's evidence may strike many citizens as extending something less than justice for all. Concerns about open government and open courts suggest an appellate process that considers all the evidence, though deferring to the jury's verdict. While there is some dispute whether Lady Justice should wear a blindfold,[137] the metaphor was surely never intended to suggest that justice disregards the facts.

In sum, the exclusive standard is helpful in recognizing the distinctive roles of judge and jury, intermediate and supreme court. By contrast, the inclusive standard is helpful in recognizing what courts actually do, and must be seen to do. Both are important; we should avoid choosing between them if we can.

### E. Conclusion: The Standards Are The Same

As both the inclusive and exclusive standards for the scope of legal-sufficiency review have a long history in Texas, as both have been used in other contexts to review matter-of-law motions, as the federal courts have decided the differences between the two are more semantic than real, and as both—properly applied—must arrive at the same result, we see no compelling reason to choose among them.

 The key qualifier, of course, is "properly applied." The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Whether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.

While judges and lawyers often disagree about legal sufficiency in particular cases,

---

**134.** *State v. Biggar,* 873 S.W.2d 11, 13 (Tex. 1994).

**135.** *See, e.g., CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 102 (Tex.2000) (noting plaintiff argued defendant's frequent inspections of stairs showed knowledge of inherent danger, while court held it showed the opposite as inspections found nothing); *State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 45 (Tex.1998) (affirming bad-faith verdict after noting insurer's reasons for denial were contradictory).

**136.** *See, e.g., Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 327 (Tex.1993) (noting evidence of single previous minor stumble supported negligence finding but not gross negligence).

**137.** *See* Judith Resnik, *Managerial Judges,* 96 Harv. L.R. 374, 382–83 (1982) (noting that images of justice appeared blindfolded only within the last four hundred years).

the disagreements are almost always about what evidence jurors can or must credit and what inferences they can or must make. It is inevitable in human affairs that reasonable people sometimes disagree; thus, it is also inevitable that they will sometimes disagree about what reasonable people can disagree about. This is not a new problem; Justice Calvert noted it almost fifty years ago:

> The rule as generally stated is that if reasonable minds cannot differ from the conclusion that the evidence lacks probative force it will be held to be the legal equivalent of no evidence. The application of the rule can lead to strange results. It is theoretically possible, and sometimes not far from actual fact, that five members of the Supreme Court will conclude that the evidence supporting a finding of a vital fact has no probative force, and in reaching the conclusion through application of the rule will thus hold, in effect, that the trial judge who overruled a motion for instructed verdict, the twelve jurors who found the existence of the vital fact, the three justices of the Court of Civil Appeals who overruled a "no evidence" point of error and four dissenting justices of the Supreme Court are not men [138] of "reasonable minds." [139]

It is not hubris that occasionally requires an appellate court to find a jury verdict has no reasonable evidentiary basis. As Justice Frankfurter stated long ago:

> Only an incompetent or a wilful judge would take a case from the jury when the issue should be left to the jury. But since questions of negligence are questions of degree, often very nice differences of degree, judges of competence and conscience have in the past, and will in the future, disagree whether proof in a case is sufficient to demand submission to the jury. The fact that [one] thinks there was enough to leave the case to the jury does not indicate that the other [is] unmindful of the jury's function. The easy but timid way out for a trial judge is to leave all cases tried to a jury for jury determination, but in so doing he fails in his duty to take a case from the jury when the evidence would not warrant a verdict by it. A timid judge, like a biased judge, is intrinsically a lawless judge.[140]

## V. Application to the Facts

It remains to apply the scope of review to the facts presented.

 A majority of the court of appeals affirmed the verdict for the Wilsons, finding legally sufficient evidence that the City knew increased flooding on the Wilsons' property was substantially certain to occur.[141] The majority pointed to the following proof. First, the Wilsons' expert testified that the revised plan was certain to

---

**138.** Justice Calvert's use of the masculine in 1960 may perhaps be forgiven, for although Hattie Hennenberg, Hortense Ward, and Ruth Brazzil served temporarily on this Court in 1925, and Sarah T. Hughes was appointed as a state district judge ten years later, it was not until 1954 that the Texas Constitution was amended to allow women to serve as jurors, and not until 1973 that Mary Lou Robinson became the first women to serve as a state appellate judge. See James T. "Jim" Worthen, *The Organizational & Structural Develop-*ment of Intermediate Appellate Courts in Texas, 46 S. TEX. L.REV. 33, 75 (2004); Robert L. Dabney, Jr. *We Were There*, HOUSTON B.J. Nov.-Dec.1999, at 42, 44.

**139.** Calvert, *supra* note 12, at 364.

**140.** *Wilkerson v. McCarthy*, 336 U.S. 53, 65, 69 S.Ct. 413, 93 L.Ed. 497 (1949) (Frankfurter, J., concurring).

**141.** 86 S.W.3d 693, 709.

create flooding.[142] Second, as the City admittedly knew that development would increase runoff and the Sebastian ditch would channel it toward the Wilsons, so it knew "with absolute certainty" that flooding would be the result.[143] Third, the City "did not explain" why the Master Plan required a drainage ditch across the Wilsons' property but the revised plan did not, thus allowing jurors to infer that the City knew this omission would cause flooding.[144]

■ Of course, the City *did explain* why it approved the new plan—because three sets of engineers said the omitted ditch was unnecessary—but the court felt compelled by the scope of review to disregard that evidence.

For several of the reasons stated earlier, we believe the court of appeals did not properly apply the scope of review. The critical question in this case was the City's state of mind—the Wilsons had to prove the City *knew* (not should have known) that flooding was substantially certain. A reviewing court cannot evaluate what the City knew by disregarding most of what it was told.

■ Moreover, when a case involves scientific or technical issues requiring expert advice (as this one does), jurors cannot disregard a party's reliance on experts hired for that very purpose without some evidence supplying a reasonable basis for doing so.[145] Here, it was uncontroverted that three sets of engineers certified that the revised plans met the City's codes and regulations—and thus would not increase downstream flooding. The same firm that drew up the original Master Plan certified the revised one; unless the City had some reason to know the first certification was true and the second one was false (of which there was no evidence), there was only one logical inference jurors could draw.

None of the evidence cited by the court of appeals showed the City knew more than it was told by the engineers. The Wilsons' expert testified that flooding was (in his opinion) inevitable, but not that *the City* knew it was inevitable. The Wilsons' expert gave no opinion on the latter point.

Second, ending a ditch at a neighbor's property line may be evidence that a defendant was substantially certain of the result in some cases, but not in the context of this one. City witnesses admitted knowing development would increase runoff at the head of this drainage system, but not flooding at its foot. Calculating the effect of detention ponds and absorption in a grassy drainage ditch forty-five feet wide and over two hundred yards long required hydrological formulas, computer models, and mathematical calculations. The omission of the ditch across the Wilsons' property obviously raised concerns that the City investigated, but was no evidence that the City knew the advice it received in response was wrong.

The Wilsons also point to a letter Sebastian's attorney wrote the City demanding indemnity in case the new ditch flooded the Wilsons. But attorneys must protect a client from potential liability whether it is

142. *Id.* at 703, 705.

143. *Id.* at 705.

144. *Id.* at 704–05.

145. *Provident Am. Ins. Co. v. Castañeda,* 988 S.W.2d 189, 194–95 (Tex.1998); *see also State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448 (Tex.1997) (holding reliance on expert report did not foreclose bad-faith claim because claimant "presented evidence from which a fact-finder could logically infer that Haag's reports were not objectively prepared, that State Farm was aware of Haag's lack of objectivity, and that State Farm's reliance on the reports was merely pretextual.").

real or imagined—and justly so. In the letter, the attorney never purports to be an expert in hydrology, or cite the opinions of anyone who was. This letter may have required the City to investigate, but again is no evidence it knew the advice it received was wrong.[146]

Our concurring colleagues believe reasonable jurors could nevertheless disregard what all the engineers certified because the City had a financial incentive to believe them rather than pay the Wilsons. Of course, defendants have a financial incentive to avoid paying damages in every case; if that incentive alone is some evidence of liability, then plaintiffs create enough evidence to go to the jury every time they file suit.

But more important, this ignores what the Wilsons had to prove—not that the City *might* have disbelieved the engineers' reports, but that it *did*. This requires evidence of "objective indicia of intent" showing the City knew identifiable harm was occurring or substantially certain to result.[147] Jurors' doubts about the engineers' reports or the City's motives could not supply them with objective indicia that the City knew flooding would occur. Constitutional concerns about the roles of judge and jury do not allow either to make such evidence up.

We agree with the court of appeals that the Wilsons presented some evidence that the City damaged their property, and that in drawing up and approving drainage plans it was acting for a public purpose. The missing piece in the evidence here is proof that the City knew the plans it approved were substantially certain to increase flooding on the Wilsons' properties.

While the City certainly knew that fact after the flooding started, the Wilsons never pleaded or submitted to the jury any takings theory other than the City's initial approval.

Crediting all favorable evidence that reasonable jurors could believe and disregarding all contrary evidence except that which they could not ignore, we hold there was no evidence the City's approval of the revised drainage plan was an intentional taking.

Accordingly, we reverse the court of appeals' judgment against the City under article I, section 17 of the Texas Constitution. Because the court of appeals declined to address the jury's alternate verdict for the Wilsons on a claim under the Texas Water Code, we remand the case to that court to determine that issue.

Justice O'NEILL filed a concurring opinion in which Justice MEDINA joined.

Justice JOHNSON did not participate in the decision.

Justice O'NEILL, joined by Justice MEDINA, concurring.

The Court does an excellent job of explaining the appropriate scope of no-evidence review: the reviewing court "must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." 168 S.W.3d at 807. I agree with this standard and join Parts I through IV of the Court's opinion. But I cannot join Part V, because the Court misapplies the standard that it so carefully

---

146. *Cf. Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 140 (Tex.2004) (holding complaint letters may require manufacturer to investigate, but are not evidence complaints are true).

147. *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex.2004) (emphasis added).

articulates by crediting evidence the jury could reasonably disregard.

The City of Keller's Master Drainage Plan required it in part to condemn a 2.8–acre drainage easement on the Wilson property for construction of an earthen channel forty-five feet wide and five feet deep that would funnel water from the adjoining Sebastian property over the Wilson property into the Little Bear Creek Watershed. The City chose not to proceed with this portion of the plan, though, claiming reliance on engineers' assurances that the developers' installation of retention ponds on neighboring land could prevent flooding. The drainage channel that was actually built ended at the edge of the Sebastian property and funneled water directly onto the Wilsons' land, destroying eight acres of farmland worth almost $300,000. The Court holds that the jury was required to believe the City's testimony that it relied on the engineers' assurances and thus did not know flooding was substantially certain to occur, stating that when a case requires expert testimony "jurors cannot disregard a party's reliance on experts hired for that very purpose without some evidence supplying a reasonable basis for doing so." 168 S.W.3d at 829. Even if this were an appropriate review standard—which it hasn't been until today—I believe the jury had a reasonable basis upon which to disregard the City's professed reliance; the City had a financial incentive to disclaim knowledge of the flooding, and the Wilsons presented some evidence that the City had independent knowledge flooding was substantially certain to occur. In my view, the jury was the proper body to weigh the witnesses' credibility and resolve these disputed fact issues. I nevertheless agree that the City cannot be liable for a taking in this case because I believe that a city's mere act of approving a private development plan cannot constitute a taking for public use. Ac-cordingly, I concur in the Court's judgment but not its reasoning.

## I

Questions of intent are generally proved only by circumstantial evidence; as the court of appeals in this case aptly noted, "defendants will rarely admit knowing to a substantial certainty that given results would follow from their actions," and therefore the jury must be "free to discredit defendants' protestations that no harm was intended and to draw inferences necessary to establish intent." 86 S.W.3d 693, 704. I agree with the Court that the jury's ability to disbelieve the City's protestations is not itself "evidence of liability." 168 S.W.3d at 830. Instead, the jury's ability to weigh the witnesses' credibility means that the City's testimony did not conclusively establish its lack of liability. Because liability is not conclusively negated, we must examine the record to see if there is legally sufficient evidence from which the jury could infer that the City knew flooding was substantially certain to occur. I would hold that the evidence of intent that was presented in this case allowed the jury to draw such an inference.

At trial, the Wilsons presented evidence that the City had independent sources of knowledge that flooding was substantially certain to occur. First, they demonstrated that the developers' plan itself was flawed. Rather than incorporate a drainage ditch running across the Wilson property, as the City's Master Plan required, the developers' plan ended the drainage ditch abruptly at the edge of the Wilson property. The Wilsons' expert testified that the plan's implementation would necessarily "increase the volume and flow of water across the Wilson property from the rate of fifty-five cubic feet per second to ninety-three cubic feet per second." 86 S.W.3d at

703. Second, the City was aware that water flowed across the Wilson property before the development commenced, and, as the court of appeals pointed out, the City's Director of Public Works admitted that the City knew the development would increase the water's flow and velocity; specifically, he testified that "the City knew the upstream water would be absorbed less and would flow faster due to the removal of trees and vegetation from the developments and from the forty-five-foot-wide earthen channel" that ended at the Wilson property's edge. *Id.* at 705. Finally, there was evidence that the City received a letter warning that the developers' plan would subject the Wilson property to flooding.

While I believe there is some evidence that the City knew flooding was substantially certain to occur, there is also some evidence that it did not. City officials testified that they relied on the representations of engineers who assured them retention ponds could substitute for a drainage easement and the Wilson property would not be damaged. If the jury accepted this evidence as true, I agree that the intent element would be negated, which would preclude the City's takings liability. But I do not agree that the jury was bound to accept the City's testimony as true. The Court itself notes that jurors "may choose to believe one witness and disbelieve another," and that "[c]ourts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it." 168 S.W.3d at 819. This statement mirrors our prior jurisprudence, which has long provided that a jury "has several alternatives available when presented with conflicting evidence" because it "may believe one witness and disbelieve others," "may resolve inconsistencies in the testimony of any witness," and "may accept lay testimo-

ny over that of experts." *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986) (citations omitted).

As the Court itself states, jurors are required to credit undisputed testimony only when it is "clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." 168 S.W.3d at 820. The City's testimony does not meet this standard. The City Manager did testify that the City "would not have approved the developments unless [it was] assured that the developments did not increase the velocity of water or the flow of water" onto the neighboring property. 86 S.W.3d at 706. But the Wilsons disputed whether the City's protestations were credible, pointing out that the City had a powerful incentive to profess a lack of knowledge through reliance on the engineers' assurances because it would then avoid the considerable expense of compensating the Wilsons for the property that would otherwise have been condemned under the Master Drainage Plan. *See id.* at 705.

Moreover, the Court's conclusion that juries cannot disregard a party's reliance on expert opinions is not consistent with our jurisprudence. The Court cites two cases for this proposition, but neither supports the Court's analysis; instead, both cases support the conclusion that the jury, as the finder of fact, should appropriately resolve factual disputes regarding a party's reliance on hired experts. *Provident Am. Ins. Co. v. Castañeda,* 988 S.W.2d 189, 194–95 (Tex.1998); *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448–50 (Tex.1997).

In *Castañeda,* a bad-faith insurance case, there was no question that the insurer had relied on an expert's assurances and thus no dispute about whether the

jury could have disregarded that evidence. *Castañeda,* 988 S.W.2d at 194–95. In that case, we performed a traditional legal sufficiency analysis and concluded there was no evidence that the defendant acted in bad faith. *Id.* at 194. We did state that reliance on an expert's opinion will not preclude a finding of bad faith if the expert's opinion was "unreliable and the insurer knew or should have known that to be the case." *Id.* However, we did not hold that the jury must credit a party's testimony that it relied on an expert.

We reiterated this point in *Nicolau,* another bad-faith insurance case. There, the Court noted "we have never held that the mere fact that an insurer relies upon an expert's report to deny a claim automatically forecloses bad faith recovery as a matter of law," and again concluded that purported "reliance upon an expert's report, standing alone, will not necessarily shield" the defendant from liability. *Nicolau,* 951 S.W.2d at 448. The Court conceded that "[w]ere we the trier of fact in this case, we may well have concluded that [the insurer] did not act in bad faith," but concluded that the "determination is not ours to make" because "the Constitution allocates that task to the jury and prohibits us from reweighing the evidence." *Id.* at 450 (citing TEX. CONST. art. I, § 15, art. V, §§ 6, 10).

The same is true in this case. The jury was not required to believe that the City did not know flooding was substantially certain to occur because it relied on assurances to the contrary; as a reviewing Court, we should "assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it." 168 S.W.3d at 819. Such credibility determinations are uniquely suited and constitutionally committed to the fact finder. *See* TEX. CONST. art. I, § 15, art. V, § 6; *see also Nicolau,* 951 S.W.2d at 450.

## II

Although I disagree with the Court's conclusion that the jury was required to credit the City's testimony, I agree with its judgment in the City's favor because, in my view, the City's mere approval of the private development plans did not result in a taking for public use, as the constitutional standard requires for a compensable taking. TEX. CONST. art. I, § 17. The City did not appropriate or even regulate the use of the Wilsons' land, nor did it design the drainage plan for the proposed subdivisions. Instead, the City merely approved subdivision plans designed by private developers, and that design included inadequate drainage capabilities. The City argues, and I agree, that its mere approval of private plans did not transfer responsibility for the content of those plans from the developers to the City. Municipalities review subdivision plats "to ensure that subdivisions are safely constructed and to promote the orderly development of the community." *City of Round Rock v. Smith,* 687 S.W.2d 300, 302 (Tex.1985); *see* TEX. LOC. GOV'T CODE § 212.002. Such a review is intended to protect the city's residents; it is not intended to transfer responsibility for a flawed subdivision design from the developers to the municipality. *See, e.g., City of Round Rock,* 687 S.W.2d at 302; *see also Cootey v. Sun Inv., Inc.,* 68 Haw. 480, 718 P.2d 1086, 1091 (1986) (holding that "[t]he permit process by which the County approves or disapproves the development of a proposed subdivision reflects an effort by government to require the developer to meet his responsibilities under the subdivision rules, regulations, and laws," and that "the primary responsibility of providing an adequate and safe development rests with ... the developer, and not with the County").

Because the primary responsibility for a development's design rests with the devel-

oper, and because the plat-approval process does not transfer such responsibility to the municipality, mere plat approval cannot be a basis upon which to predicate takings liability. We have held that, to be liable for a taking, a governmental entity must "perform certain acts in the exercise of its lawful authority ... which resulted in the taking or damaging of plaintiffs' property, and which acts were the *proximate cause* of the taking or damaging of such property." *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736 (1941) (emphasis added). In this case, flooding resulted from the developers' defective drainage design, not from the City's approval of the plat; thus, the City's approval was not the proximate cause of the damage to the Wilson property.

Other courts, faced with similar facts, have also concluded that a governmental entity cannot be liable for a taking when its only action is to approve a private development plan. *See Phillips v. King County,* 136 Wash.2d 946, 968 P.2d 871, 879 (1998); *see also Pepper v. J.J. Welcome Constr. Co.,* 73 Wash.App. 523, 871 P.2d 601, 606 (1994). In *Phillips,* the Washington Supreme Court observed that there is no public aspect to a private development and concluded that "[i]f the county or city were liable for the negligence of a private developer, based on approval under existing regulations, then the municipalities, and ultimately the taxpayers, would become the guarantors or insurers for the actions of private developers whose development damages neighboring properties." *Phillips,* 968 P.2d at 878. The court in *Pepper* similarly examined an inverse condemnation claim based upon a county's approval of private developments with defective drainage plans; it, too, concluded that the county's approval did not cause the resultant flooding and did not result in an unconstitutional taking. *Pepper,* 871 P.2d at 606. The court noted that the

flooding was "not the result of the County appropriating or regulating their use of the land," and held that "[t]he fact that a county regulates development and requires compliance with road and drainage restrictions does not transform a private development into a public project." *Id.* The court concluded that because "land use regulation of [the plaintiffs'] property did not cause the damages, no inverse condemnation was involved." *Id.* I am persuaded by the reasoning of the courts in *Phillips* and *Pepper,* and would similarly conclude that the City's plat approval in this case did not amount to an unconstitutional taking as a matter of law.

The court of appeals in this case advanced an alternative reason for affirming the trial court's judgment, suggesting that even if the City could not be liable for merely approving a subdivision plat, it could nevertheless be held liable for failing to condemn a drainage easement across the Wilson property. 86 S.W.3d at 707. The court of appeals stated that "the City chose not to condemn any of the Wilson property," but instead "allow[ed] the water flowing from the Sebastian easement to discharge, uncontrolled, across the Wilson property." *Id.* As noted above, however, it was the developers' plan—not the City's actions—that allowed the water to flood the Wilson property. Because the City's action did not cause the flooding, I disagree that the City's failure to condemn an easement is relevant to takings liability. If the City were responsible for the flooding but chose not to condemn the property, it might be subject to inverse-condemnation liability. *See Tarrant County Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 554 (Tex.2004) ("When the government takes private property without first paying for it, the owner may recover damages for inverse condemnation."). However, if a governmental entity's actions are not the

"proximate cause of the taking or damaging" of the property, then the entity cannot be liable for a taking. *Hale*, 146 S.W.2d at 736. Accordingly, the entity need not condemn property merely because a private entity is causing damage. This rule does not leave owners of flooded property without a remedy; when a private development floods neighboring land, the owner of the damaged property will ordinarily have recourse against the private parties causing the damage. *See* TEX. WATER CODE § 11.086(a), (b) (providing that "[n]o person may divert or impound the natural flow of surface waters in this state ... in a manner that damages the property of another by the overflow of the water diverted or impounded" and that "[a] person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow"). Because the developers' design of the plat—not the City's approval—caused the flooding damage in this case, I would hold that the City cannot be held liable for an unconstitutional taking under Article I, Section 17 of the Texas Constitution.

### III

Because I believe the Court fails to give due regard to the jury's right to make credibility determinations, I cannot join Part V of the Court's opinion. But because I conclude that the City's mere act of approving a private development plan did not cause the Wilson property to be "taken, damaged or destroyed for or applied to public use," TEX. CONST. art. I, § 17, I agree that the City cannot be held liable for a taking in this case. Accordingly, I concur in the Court's judgment.