Sarah A. SMITH et al, Appellants,

v.

Thomas HENNINGTON and Joan
Hennington, Appellees.

No. 11–06–00120–CV.

Court of Appeals of Texas,
Eastland.

Jan. 24, 2008.

Gary D. Peak, Eastland, for appellant.

Russell W. King, King Law Office, P.C., Stephenville, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

JIM R. WRIGHT, Chief Justice.

Plaintiffs Sarah A. Smith, Linda Martin, Richard Vann, Maxine Vann, Kinley Lee, and Susie Lee brought suit against Thomas Hennington and Joan Hennington to recover damages stemming from a dispute over approximately forty acres of real property formerly owned by Thomas Hennington. Thomas filed a counterclaim requesting damages, attorney's fees, and a declaratory judgment invalidating the deeds to the plaintiffs and quieting the title to the property. The trial court found in favor of the plaintiffs on the title issues and awarded them attorney's fees of $2,500. Both sides appeal: the plaintiffs appeal the lack of attorney's fees and other damages, and the defendants appeal the title issues. We affirm.

### Issues and Standards of Review

The plaintiffs present five issues for review. In the first and second issues, they argue that the trial court erred in awarding zero damages to Smith and Martin for intentional infliction of emotional distress and mental anguish. In the third issue, they argue that the trial court erred in awarding zero damages to Vann for intentional infliction of emotional distress, mental anguish, and loss of use. In the fourth issue, the plaintiffs contend that the trial court erred in awarding zero damages to Lee for loss of use and enjoyment and other expenses incurred because of the defendants' wrongful conduct. In their final issue, the plaintiffs contend that the trial court erred in awarding only $2,500 in attorney's fees.

The defendants present two issues for review. In the first issue, they challenge the legal sufficiency of the evidence establishing the plaintiffs' superior title with respect to Joan. In the second issue, they challenge the legal and factual sufficiency of the evidence establishing the plaintiffs' superior title with respect to Thomas.

The parties did not request findings of fact or conclusions of law following the trial court's judgment. In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, all findings necessary to support the trial court's judgment are implied. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex. 1992); *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). A trial court's implied findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex. 1991). When, as in this case, a reporter's record is filed, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). We conduct our review of sufficiency challenges to implied findings under the same standards of review that govern sufficiency challenges to jury findings or a trial court's findings of fact. *See Roberson,* 768 S.W.2d at 281. In the absence of findings, the judgment of the trial court must be affirmed if it can be upheld on any available legal theory that finds support in the evidence. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987).

To analyze a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We must review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. We may sustain a no-

evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more that a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361, 362–63 (1960)).

To analyze a factual sufficiency challenge, we must consider and weigh all of the evidence and determine whether the evidence in support of the finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

### Defendants' Title Issues

The record in this case shows that Smith and Martin obtained a judgment against Thomas in March 2000. Thomas's property was levied upon and sold in satisfaction of the judgment. On April 2, 2002, after issuing a writ of execution, the sheriff's department conducted a sheriff's sale of the property surrounding Thomas's designated ten-acre homestead. Smith and Martin purchased the property at the sheriff's sale and obtained a sheriff's deed. Smith and Martin subsequently sold some of the property to the Vanns and some to the Lees. In the meantime, however, Thomas's ex-wife, Joan, filed an affidavit in the county clerk's office claiming that she had an interest in the property. This affidavit clouded the title to the property. Thomas continued to claim ownership of the property and refused to recognize any of the plaintiffs as owners. According to the plaintiffs, Thomas interfered with their use of the property and harassed them.

### Thomas's Claim

■ Thomas contended at trial that the sheriff's sale was not valid because the property was part of his homestead and was, therefore, exempt from seizure. Thomas argued that the property was not in the city limits, that the property was rural rather than urban, and that he was therefore not limited to a ten-acre homestead but was entitled to include the property at issue in his homestead. Thomas urges the same contentions on appeal, relying upon TEX. PROP.CODE ANN. § 41.001 (Vernon Supp.2007), §§ 41.002, 41.005, 41.022 (Vernon 2000). Pursuant to Section 41.001, a homestead may not be seized to pay creditors' claims unless the claim falls within a specified exception; no exception is applicable to this case. A homestead may be either urban or rural. Section 41.002. An urban homestead can be no more than ten acres of land in one or more contiguous lots. Section 41.002(a). A rural homestead can be no more than 200 acres for a family or 100 acres for a single adult and may be located in one or more parcels. Section 41.002(b). A homestead is considered urban if the property is (1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision and (2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality: electric, natural gas, sewer, storm sewer, and water. Section 41.002(c).

Although Thomas contends that the property is located outside the city limits of Ranger, there is ample evidence indicating otherwise. Testimony showed that, although the property was not inside the boundaries of the original town of Ranger, the property had been incorporated by vote into the city limits of Ranger in 1919. City taxes were levied and collected on the property. Thomas paid city taxes on the property. There was also testimony indicating that police protection, fire protection, electric service, city water, natural gas, drainage ditches, and the city sewer system were either being provided to the property or were available to the property. Although controverted, the evidence is both legally and factually sufficient to support the trial court's implied findings that the property was urban and that Thomas was limited to a ten-acre homestead. Because the property was not part of Thomas's homestead, it was not exempt from seizure. The plaintiffs, therefore, proved superior title through the sheriff's sale. The defendants' second issue is overruled.

*Joan's Claim*

 Joan contended at trial and contends on appeal that she has an interest in the property because she and Thomas purchased part of the property together while they were married and because she has not been paid for her portion of the property. Joan filed a declaration affidavit in the county clerk's office. In doing so, she intended to put a cloud on the title in hopes that she would be paid for her share of the property. The record shows, however, that Joan signed a quitclaim deed on May 11, 2001, the same day she filed for divorce from Thomas. The quitclaim deed conveyed any interest Joan may have had in the property to R.J. Gardner, who was Thomas's biological son. Thomas had conveyed his interest in the property to Gardner on April 7, 2000, two weeks after the original judgment was obtained by Smith

and Martin against Thomas. Gardner subsequently conveyed the property back to Thomas on January 18, 2002. Under these circumstances, the evidence is legally sufficient to support the trial court's implied finding that the plaintiffs' claim to title in the property through the sheriff's sale was superior to Joan's claim. Joan forfeited her interest in the property when she signed the quitclaim deed transferring any interest she may have had to Gardner, who later conveyed the property back to Thomas. The defendants' first issue is overruled.

*Plaintiffs' Damages*

 The plaintiffs urge in their first four issues that the trial court erred in failing to award monetary damages for intentional infliction of emotional distress, mental anguish, loss of use and enjoyment, and other expenses that resulted from the defendants' wrongful conduct. In their petition, the plaintiffs asserted that they were entitled to monetary damages based upon the following causes of action: "claim for cloud on title," tortious interference with a contract, intentional infliction of emotional distress, and trespass and interference with the use and enjoyment of the property. Smith, Martin, Richard, and Kinley proffered testimony in support of their damages, but the trial court did not award any such damages.

 First, damages are not available for a cause of action for "cloud on title." *Ellis v. Waldrop*, 656 S.W.2d 902, 904–05 (Tex.1983). A suit to remove a cloud from the title involves a specific, equitable remedy. *Id.* Furthermore, in order to recover damages for the disparagement or slander of title, the loss of a specific sale must be shown. *Id.* There was no allegation that a sale was lost in this case. We hold that the trial court's failure to award monetary

damages based upon the cloud on the title was not erroneous.

Next, the trial court impliedly found that the defendants did not tortiously interfere with a contract. However, the plaintiffs do not challenge this implied finding in their brief. Consequently, we will not address any damage issue relating to the trial court's failure to award damages for the defendants' alleged tortious interference with a contract.

With respect to their claim for intentional infliction of emotional distress, the plaintiffs assert that the testimony at trial established the elements of that tort and also established that the plaintiffs suffered a variety of physical ailments along with their mental anguish. Smith put a value of $150,000 on her damages. Martin put a value of $100,000 on hers. Richard put a value of $25,000 on his damages for the loss of use of the property, mental anguish, and harassment. Kinley testified that, because of the defendants' actions, he has not been able to build a home on the property as he had intended; he has had to pay about $16,250 to rent a shop; and he has incurred other damages, including at least $2,000 because he could not plant or cultivate coastal on the property.

■ In order to prove a claim for intentional infliction of emotional distress, the following elements must be shown: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex.2006); *Twyman v. Twyman*, 855 S.W.2d 619 (Tex.1993); RESTATEMENT (SECOND) OF TORTS § 46 (1965). According to Section 46, comment d, which is partially quoted in *Kroger* and *Twyman:*

[L]iability [exists] only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice".... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Conduct that is merely insensitive or rude is not extreme and outrageous, nor are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Kroger*, 216 S.W.3d at 796 (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex.1999)). Whether the conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is generally a matter for the court to determine. *GTE*, 998 S.W.2d at 616. However, where reasonable minds may differ, it is for the factfinder to determine. *Id.*

After reviewing the record in this case, we hold that the trial court could have properly concluded that the defendants' conduct was not so outrageous in character, or so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. Because the plaintiffs failed to prove that the defendants' conduct was extreme and outrageous, they failed to prove an essential element of their cause of action for intentional infliction of emotional distress. Consequently, the plaintiffs were not entitled to damages for that cause of action. The plaintiffs' first, second, third, and fourth issues are overruled.

*Attorney's Fees*

In their final issue, the plaintiffs assert that the trial court erred in awarding only $2,500 in attorney's fees. Plaintiffs' counsel testified that he spent 89.5 hours working on this case and that $150 per hour was a reasonable rate. Accordingly, he requested $13,425 in attorney's fees. He also sought reimbursement for costs of $792.17.

Attorney's fees may be recovered from an opposing party only when permitted by statute or by contract. *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex.1999). The plaintiffs assert that they are entitled to attorney's fees based upon their claims for tortious interference with a contract or upon the declaratory nature of the case. The plaintiffs, however, did not prevail on their tortious interference claims. Furthermore, no statutory or contractual basis exists for the recovery of attorney's fees under the plaintiffs' tortious interference claims.

In a declaratory judgment proceeding, the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997). As a general rule, the party seeking to recover attorney's fees has the burden of proof. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). To show that attorney's fees are reasonable and necessary, a plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees. *Id.; see* Tex. Civ. Prac. & Rem.Code Ann. § 37.004 (Vernon Supp.2007) (authorizing declaratory relief to determine a question of construction or validity arising under various instruments, including a deed). If attorney's fees are authorized for some, but not all, of a party's claims, that party generally has the duty to segregate the recoverable attorney's fees from the unrecoverable attorney's fees. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313–14 (Tex.2006). However, a party is not required to segregate attorney's fees if "discrete legal services advance both a recoverable and unrecoverable claim" causing the fees to become "so intertwined that they need not be segregated." *Id.*

In this case, plaintiffs' counsel did not segregate the recoverable fees—the fees incurred to have the plaintiffs' deeds declared valid—from the remaining unrecoverable fees. We cannot hold that the counsel's legal services provided to advance the declaratory claims were so intertwined with the legal services provided to advance the remaining claims as to be inseparable. The declaratory claims did not involve the same set of facts as the claims concerning the defendants' conduct and the resulting damages. It appears from the record that a majority of the plaintiffs' case, including their petition and the evidence presented at trial, related to the defendants' conduct and the damages caused to the various plaintiffs by such conduct and, thus, did not relate to the recoverable claims. The plaintiffs did not need to prove the defendants' conduct or the harm it caused in order to show that their deeds were valid. Because the plaintiffs had the burden of proof and failed to segregate the attorney's fees, we cannot hold that the trial court erred in awarding only $2,500 for the plaintiffs' attorney's fees. The plaintiffs' fifth issue is overruled.

The judgment of the trial court is affirmed.