**Opinion filed April 30, 2012**



## In The

# Eleventh Court of Appeals

_____

### No. 11-10-00102-CV

_____

### SCOTT MONROE AND MARGARET MONROE, Appellants

### v.

### JONATHAN GOFF, DARYL S. HARDEN,
### AND NORMAN O. FARRIS, Appellees

**On Appeal from the 294th District Court**

**Van Zandt County, Texas**

**Trial Court Cause No. 07-00291**

### MEMORANDUM OPINION

After a bench trial, the trial court awarded title and possession of a certain mineral interest to Jonathan Goff, Daryl S. Harden, and Norman O. Farris. It ordered Scott Monroe and Margaret Monroe to convey that interest to appellees. The trial court also awarded attorney's fees to appellees. We modify and affirm.

The evidence shows that Harden and the Monroes had done business with each other over the years, always on a handshake. The Monroes were in the import/export business, among other things. Harden owned H&A Sales and had purchased various items of merchandise from the

Monroes for resale through his company. Sometime in the middle of the summer of 1997, Mr. Monroe came to him with the business proposition made the basis of this suit. The Monroes had purchased various mineral interests near Grand Saline that were valuable for their salt content. Another such mineral interest, the H.G. Fisher interest, had come up for sale, and Mrs. Monroe had signed a contract to purchase it but needed someone to provide the funds. Apparently, it was important to purchase this interest because it was contiguous to interests already owned by the Monroes and would increase the value of the whole if it were put together. It was Harden's and Goff's understanding that they were going to "bundle" the new piece of property with that already owned by the Monroes and sell it. Mrs. Monroe testified that she intended to mine it and thereby provide a benefit to the community through "creating economy and jobs." She believed it was "God's salt" and was "to benefit all the people."

Harden told the Monroes that he and his wife would discuss the investment and that he would get back to them. Harden and his wife decided to make the investment but did not have all of the $121,814 the Monroes had told him it would take to purchase the mineral interest. Harden contacted Goff to offer part of the deal to him. Farris was also contacted. In mid-August 1997, Goff and Harden traveled to Dallas to meet with the Monroes to discuss the purchase.

After Harden, Goff and Farris agreed to invest the money to purchase the interest, Mr. Monroe gave them instructions on how to wire the purchase price to the Monroes. The August 25, 1997 instructions from Mr. Monroe were that the money was to be wired to a Dallas bank, with credit to a Wills Point bank, and with ultimate credit to KangTai Enterprises, Inc. According to Mrs. Monroe, her brother, Heping Liao, owned KangTai. KangTai's original bylaws also show that the secretary of KangTai was Liao Shu Qin. Goff testified to the effect that Liao Shu Qin and Margaret Monroe are one and the same person. Mrs. Monroe told the trial court that she immigrated to the United States, specifically to Texas, from China.

Harden testified that the money was wired in the amount and per the instructions he had been given by Mr. Monroe. On September 11, 1997, the wire transfers ultimately were credited to KangTai's account in a Wills Point bank in the amount agreed upon, less bank fees. KangTai's bank records show those transfers. Harden said that the Monroes told him that they received the money, had purchased the mineral interest with it, and had taken a deed to the interest in Mrs. Monroe's name in accordance with their discussions.

2

In his deposition, a portion of which was introduced at trial, Mr. Monroe confirmed the payment of the money to purchase the mineral interest. In that portion of her deposition that was introduced into evidence, Mrs. Monroe testified that she had never seen "any notification wire receipt" until after the lawsuit was filed. She did not know whether appellees ever wired any money to KangTai because KangTai was her brother's company. She does not know what was done with appellees' money. At trial, she maintained in her testimony that the wire transfers that showed up in the KangTai account on September 11, 1997, were monies that she deposited personally into the KangTai account as a loan.

The H.G. Fisher mineral interest was transferred to Mrs. Monroe by deed dated September 11, 1997, the same day the wire transfers were credited to KangTai's account. The evidence showed that, on that same day, Mrs. Monroe bought a cashier's check in the amount of $111,820 with proceeds from that same KangTai account. The cashier's check was made payable to Van Zandt County Abstract Company. The owner of Van Zandt County Abstract Company notarized the deed from Fisher to Mrs. Monroe.

On September 11, 1997, the Monroes sent an "agreement" to Harden and Goff that, among other things, acknowledged receipt of $121,814. The agreement contained a recitation that the funds were deposited into an operating account of U.S. Salt International, Inc.—the shares of which were owned 100% by the Monroes. The agreement sent by the Monroes to Harden and Goff contained a recitation that the money was for a 50% interest in U.S. Salt and that the shares would be transferred contingent upon the purchase of the H.G. Fisher interest. The title to the mineral interest was to be taken in Mrs. Monroe's name and transferred to U.S. Salt within seven days from the date the H.G. Fisher interest was purchased. No U.S. Salt stock was ever transferred, and the deed to the mineral interest was not transferred to U.S. Salt within seven days after the acquisition of the mineral interest. The agreement contained this provision: "If any of these conditions are not met, this agreement is not valid." Mr. Monroe acknowledged sending the "agreement"; Mrs. Monroe's testimony was equivocal as to whether the "agreement" came from them. Regardless, the evidence shows, and the parties agree, that the "agreement," by its own terms, was not valid.

Later, on September 23, 1997, Mrs. Monroe executed a deed conveying the mineral interest to U.S. Salt. U.S. Salt, by its president, Scott W. Monroe, reconveyed the H.G. Fisher

3

mineral interest to Margaret Monroe by a deed dated September 28, 2004. That deed was acknowledged over three years later on April 21, 2008, and filed for record on April 22, 2008.

Harden testified that he heard nothing about the property for several years, but was not concerned about it because he trusted the Monroes. Later, in May 2007, after trying but being unable to make contact with the Monroes, Harden and Goff contacted an attorney in an effort to get the property transferred to them. They filed this lawsuit on April 16, 2007. In March 2009, while in a meeting to attempt to settle this lawsuit, Harden and Goff found out for the first time that the Monroes were taking the position that the mineral interest did not belong to appellees. Harden testified that he found that out when the Monroes told him so.

The settlement meeting was unsuccessful, and the case was tried to the court in January 2010. At the outset of the trial, appellees nonsuited various defendants so that Mr. and Mrs. Monroe were the only two defendants who remained in the suit. Appellees also informed the trial court that U.S. Salt, a nominal plaintiff, no longer existed and that Goff, Harden, and Farris were the only plaintiffs who remained in the case.

After it had heard all of the evidence, the trial court entered judgment awarding title and possession of the mineral interest to appellees and ordered the Monroes to convey it to appellees. The trial court also awarded appellees attorney's fees incurred in the trial court as well as upon a successful appeal to the Court of Appeals and a successful appeal to the Supreme Court of Texas. This appeal followed.

We first will dispose of a jurisdictional question posed by appellees. They argue that the Monroes' appeal was not timely because their motion for new trial was not timely filed. The courthouse was closed because of bad weather the day the motion for new trial was due to be filed. Appellees take the position that there are no provisions to extend filing deadlines in such circumstances. We disagree and hold that the Monroes timely filed their motion for new trial. *See* TEX. R. APP. P. 4.1(b) (clerk's office closed or inaccessible).

The Monroes present several points of error. We can summarily dispose of some of them. In their petition, appellees had originally included causes of action for breach of contract, breach of fiduciary duty, fraud in the inducement, conspiracy, trespass to try title, and constructive and resulting trust.

The Monroes first argue that all of appellees' causes of action are barred by limitations. When we examine the record in this case as well as the judgment entered by the trial court, it is

4

apparent that the only cause of action tried to the trial court, and the only one upon which it entered judgment, was the cause of action for the imposition of a purchase money resulting trust. All of the Monroes' points of error, except for Point of Error No. 2(B), Point of Error No. 3, and Point of Error No. 4, pertain to matters that relate to theories of recovery for which relief was neither ultimately sought by appellees nor awarded by the trial court. For that reason, Point of Error Nos. 1(A)(1-3), 1(B)(1-3), 1(C)(1-5), 1(D), 1(E), 1(F), and 1(G) are overruled. Point of Error No. 2(A) is, for the same reason, overruled. In Point of Error No. 2(B), the Monroes take issue with the implication of trusts and also address breach of fiduciary duty. In Point of Error No. 3, the Monroes assert that appellees have no standing to bring this lawsuit. In Point of Error No. 4, the Monroes address the award of attorney's fees.

The Monroes claim in Point of Error No. 2(B) that there can be no resulting or constructive trust or breach of fiduciary duty "as a matter of law." First of all, it is apparent that appellees did not try this case upon issues of constructive trust or upon a claim that there had been a breach of a fiduciary duty, and we need not consider those claims. Appellees made it very clear to the trial court and to this court that this was solely a purchase money resulting trust case. In fact, in their brief, the very first sentence in appellees' "Statement of the Case" is: "This is a resulting trust case." The record of the trial bears that out. We will consider the point as one involving a challenge to the legal sufficiency of the evidence to support the imposition of a purchase money resulting trust.

When we review a legal sufficiency challenge, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005). We will find the evidence to be legally sufficient if it would enable reasonable and fair-minded people to reach the verdict being reviewed. *Id*. at 827. We are to credit evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* We may sustain a legal sufficiency or no-evidence point of error only if the record shows one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered in support of a vital fact; (3) evidence that was offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively established the opposite of the vital fact. *Id.* at 810.

Neither findings of fact nor conclusions of law were timely requested by the Monroes, and none were entered by the trial court. When no findings of fact are filed, all those findings necessary to support the trial court's judgment are implied. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). A trial court's implied findings have the same force and dignity as a verdict of a jury rendered upon jury questions. *Smith v. Hennington*, 249 S.W.3d 600, 602 (Tex. App.—Eastland 2008, pet. denied). Where, as here, a reporter's record is filed, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* In the absence of findings, we will uphold the judgment of the trial court if it can be upheld on any available legal theory that finds support in the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987).

The Monroes apparently base their argument that there was no resulting trust as a matter of law upon these claims: (1) Harden and Goff testified that the written "agreement" represented their agreement, and that agreement states that U.S. Salt would own the mineral interest; (2) if there were a resulting trust, it could only have lasted for the twelve days that Mrs. Monroe held the title before transferring it to U.S. Salt because, after that time, she had fulfilled her obligation to transfer the mineral interest to U.S. Salt; (3) there could be no valid claims for a resulting trust when U.S. Salt transferred the interest back to Mrs. Monroe because the advancement of the purchase money has to occur at the time of purchase; and (4) none of the appellees gave their power of attorney to Mrs. Monroe to buy and hold the property for them or authorized Mrs. Monroe to be their trustee—there was no trust agreement.

A resulting trust arises by operation of law when title to property is conveyed to one party but the purchase price or a portion thereof is paid by another party. *Tolle v. Sawtelle*, 246 S.W.2d 916, 919 (Tex. Civ. App.—Eastland 1952, writ ref'd). The resulting trust must arise, if at all, at the time the transfer of title into the presumed trustee occurs. We presume that the parties intended for the grantee to hold title for the one who paid the purchase price and the one deemed, in equity, to be the true owner. *Troxel v. Bishop*, 201 S.W.3d 290, 298 (Tex. App.—Dallas 2006, no pet.). Resulting trusts are designed to prevent unjust enrichment. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984). Generally, the trustee of a resulting trust is responsible only for conveying the property to the beneficiary or in accordance with the beneficiaries instructions. *Id.*

6

First of all, the purported agreement to which the Monroes refer ceased to be a valid agreement by its own terms (assuming for the sake of argument that it ever was valid). No party to this lawsuit is claiming that the agreement is a valid agreement. In fact, all parties ultimately claim to the contrary.

The evidence we have outlined above was ample evidence upon which the trial court could have found a resulting trust: the purchase money for the interest was furnished by appellees; their money was used by the Monroes to purchase the interest; and the property was placed in the name of Mrs. Monroe. The money was wired by appellees as instructed by Mr. Monroe, and the evidence shows that appellees' money was taken out the same day it was credited to KangTai and paid by Mrs. Monroe to the title company. The trial court was free to disregard Mrs. Monroe's testimony that the wire transfers came from her as a loan to KangTai. *In re P.C.S.*, 320 S.W.3d 525, 543 (Tex. App.—Dallas 2010, pet. denied) (trial court, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be given to the testimony).

The Monroes have not shown that there was a complete absence of a vital fact or that the court was barred by rules of law or rules of evidence from giving weight to the only evidence offered in support of a vital fact or that evidence offered to prove a vital fact was no more than a scintilla or that the evidence conclusively established the opposite of a vital fact in the lawsuit. *City of Keller*, 168 S.W.3d at 810. Point of Error No. 2(B) is overruled.

In Point of Error Nos. 3(A), (B), and (C), the Monroes argue that appellees have no standing by claiming derivatively through U.S. Salt because appellees paid money individually, not as shareholders, and because U.S. Salt is defunct. They further argue that appellee Farris has no standing basically because he had nothing to do with the transaction.

Standing is a necessary component of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). The question, when raised, is one of law that is reviewed de novo. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 735 (Tex. App.—Dallas 2007, pet. denied). To satisfy the standing doctrine, there must be a real controversy between the parties, and it must also be that the judicial declaration sought will determine that controversy. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Parties who bring suit must have a sufficient relationship with the lawsuit to have a justiciable interest in the outcome of it. *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005).

Again, this case is clearly one based upon the equitable theory of purchase money resulting trust. The evidence is more than sufficient to show that each of the appellees were presenting a real controversy that could be determined by the relief that they sought: the establishment of a purchase money resulting trust whereby the mineral interest would be conveyed to them. The evidence is also more than sufficient to show that, after the appellees, all three of them, had collectively paid $121,814 to the Monroes, they had a sufficient relationship with the lawsuit to have a justiciable interest in its outcome. Point of Error No. 3 is overruled in its entirety.

In Point of Error No. 4(B), the Monroes argue that the trial court erred when it awarded attorney's fees to appellees. They maintain, among other things, that attorney's fees are not authorized either by statute or by contract in this particular case.

Generally, each party must pay his own attorney and can recover attorney's fees from opposing parties only when authorized by statute or when an agreement between the parties provides for the recovery of attorney's fees. *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 165 (Tex. App.—El Paso 1997, no writ). The burden of proof on attorney's fees lies with the party who seeks them. *Musquiz v. Marroquin*, 124 S.W.3d 906, 913 (Tex. App.—Corpus Christi 2004, pet. denied). We are to strictly construe statutes that provide for attorney's fees. *Id*.

Appellees' reasoning upon which they base their claims for attorney's fees is apparently this: The purported written contract was not valid, but what the trial court actually did was to specifically enforce, by way of a purchase money resulting trust, a previously existing oral contract between the parties. The argument continues: Because the trial court specifically enforced an oral contract, attorney's fees are recoverable under TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2011). The problem with that argument is that a purchase money resulting trust is a creature of equity. As such, the relationship is implied and does not arise from any agreement of the parties, but as a matter of law. It is a legal fiction, and not a true contract. *See Amoco Prod. Co.*, 946 S.W.2d at 166 (dealing with a claim for money had and received). Generally, the proper application of an equitable theory presupposes the lack of an adequate remedy at law, and relief for it is not usually available when there is a contract that covers the subject. A resulting trust normally carries with it an implied intention to create a trust. *Sohio Petroleum Co. v. Jurek*, 248 S.W.2d 294, 297 (Tex. Civ. App.—Fort Worth 1952, writ ref'd

8

n.r.e). No express contract is involved, and a resulting trust is strictly a creature of equity. *Savell v. Savell*, 837 S.W.2d 836, 839 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

Appellees made it very clear to the trial court and to this court that this was a purchase money resulting trust case. As we said earlier, the very first sentence in appellees' brief, under "Statement of the Case" is: "This is a resulting trust case." The record of the trial bears that out. Because it is a resulting trust case, it cannot also be a contract case, and appellees cannot recover their attorney's fees because they are neither provided for by statute nor by agreement. The trial court erred when it awarded attorney's fees to appellees. Point of Error No. 4 is sustained insofar as it contests the availability of an award of attorney's fees in this case.

The judgment of the trial court is modified to delete the award of attorney's fees to appellees. Otherwise, the judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


April 30, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

9