**Opinion filed July 30, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00189-CV
_____

## TERI LISA RUBIO, Appellant

## V.

## ROBERT EARL KLEIN, Appellee

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM-50,673**

## M E M O R A N D U M   O P I N I O N

Robert Earl Klein sought a divorce from Teri Lisa Rubio and also sought reimbursement for Rubio's debts that he had paid. After a bench trial, the trial court found that no common law marriage existed between Rubio and Klein. The trial court did, however, find that the parties had a confidential relationship, that Rubio breached her fiduciary duty to Klein, that Rubio's breach constituted constructive

fraud, and that Rubio's breach resulted in an injury to Klein and unjustly enriched Rubio. The trial court entered a judgment against Rubio and in favor of Klein in the amount of $75,897.35.[1] On appeal, Rubio contends that the trial court erred when it found that she committed constructive fraud and when it awarded her an offset of only $42,000. We affirm.

Rubio and Klein began to date in late 1999. They exchanged rings early in 2000 and began to live together in May 2000; they never formally married. Both parties testified that they had an intimate relationship and that they relied on the guidance and advice of the other in making decisions. The testimony also shows that Rubio and Klein opened a joint bank account together. The parties separated in November 2009.

While together, the parties decided to live in Rubio's house. They made the decision to refinance the house and to obtain group credit life insurance in connection with the mortgage; Klein paid the monthly mortgage payments. Klein paid off the mortgage in August 2000, in the amount of $80,556.73. Klein also paid the property taxes for Rubio's house from 2000 through 2009 in the amount of $27,940.62. Klein never paid rent, and both parties testified that Rubio never asked Klein to pay rent. Conflicting testimony existed about who took care of repairs around the house and who paid for utilities.

There is testimony that Klein trusted that he would receive his money back at some point in time or that he would be able to live in the house for the rest of his life. Klein said that he and Rubio had a discussion about his receiving his money back in the event that they sold the house. According to Klein, there was never a discussion to the effect that he paid the mortgage as a gift; he conceded that there

___

[1]We note that the trial court's judgment awards as damages "$66,497.73" in relation to the payments toward Rubio's home and property taxes but then imposes a "Real Estate Lien Note in the amount of $66,497.35." The second amount, ending in .35, coincides with the evidence and the trial court's letter judgment.

was no documentation to show that Rubio agreed to pay him back. Rubio's ex-husband testified that Klein had told him that he paid off the mortgage so that Rubio and her children would not have to worry about where to live; Rubio's ex-husband said that Klein never said that the money paid on the house was a gift. Klein testified that he never had a conversation with Rubio's ex-husband about paying off the mortgage.

On the other hand, Rubio said that she paid the mortgage payments with child-support money from her ex-husband. However, she had no documentation to show those payments. She also testified that she used her income tax return to pay property taxes in some years but could not remember when or how she paid them. Rubio refused to concede that she could not refinance her home by herself because she had been unemployed; however, she agreed that Klein signed the settlement refinance statement as a borrower, signed the deed of trust, and also procured group credit life insurance. Rubio subsequently denied that Klein had any obligation to pay the mortgage and could not recall whether Klein had made any mortgage payments, but she conceded that Klein ultimately paid off the mortgage. Rubio testified that she and Klein never discussed Klein's expectations but that Klein told her that the money for the mortgage and property taxes was a gift. Rubio claimed that Klein told her that he never wanted her or her children to worry about where they would live; she understood that to mean that his paying off the mortgage was a gift. None of the checks that Klein wrote for the property taxes indicated that they were loans to Rubio.

Klein and Rubio also opened a hair salon; Rubio was a licensed beautician. Klein testified that he paid almost $30,000 to help open and run the salon. Klein produced checks that reflected that he had paid some $9,400 to the salon; he never received any reimbursement for the money he advanced to the salon. Both parties had access to the salon's bank account.

3

Rubio said that any money that Klein advanced to the salon was also a gift. None of the checks that Klein wrote for the salon showed that they were loans to Rubio. Rubio admitted that the money Klein advanced to the salon was "for the acquisition and operation" of the salon. Rubio testified that she was unsure how much Klein advanced to the salon beyond the $9,400, but she said it was possibly as much as $7,500.

According to Rubio, Klein never told her that he expected repayment for the mortgage payments, property tax payments, or money advanced to the salon. Rubio conceded that no documentation existed to show that any of the payments Klein made were gifts. Both parties testified that Rubio never filed any tax documents in which she stated that the payments were gifts.

At the start of her relationship with Klein, Rubio had a house with a mortgage and she was unemployed. She subsequently testified further that, at the time she separated from Klein, her mortgage was paid off and she owned a profitable business that had two locations.

Neither findings of fact nor conclusions of law were timely requested by Rubio, and none were entered by the trial court, although the trial court filed a letter judgment that explains, in part, its final judgment. When no findings of fact are filed, all those findings necessary to support the trial court's judgment are implied. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). A trial court's implied findings have the same force and dignity as a verdict of a jury rendered upon jury questions. *Smith v. Hennington*, 249 S.W.3d 600, 602 (Tex. App.—Eastland 2008, pet. denied). Where, as here, a reporter's record is filed, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* In the absence of findings, we will uphold the judgment of the trial court if it can be upheld on any available legal theory that finds support in the evidence. *Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987).

4

In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the trial court's judgment and indulge every reasonable inference in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit any favorable evidence if a reasonable factfinder could and disregard any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless it is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). But factfinders "are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another." *Wilson*, 168 S.W.3d at 819. If the evidence at trial would enable reasonable minds to differ in their conclusions, we do not substitute our judgment, so long as the evidence falls within a zone of reasonable disagreement. *Id.* at 822.

Rubio's first and third issues concern the trial court's finding that Rubio breached a duty to Klein. Rubio asserts that no fiduciary relationship existed and, therefore, that no duty existed. She also asserts that no evidence or insufficient evidence exists to support the trial court's finding that she breached a fiduciary duty to Klein. Rubio's first issue regards Klein's payments toward the mortgage and property taxes. Her third issue concerns Klein's payments toward the salon.

The existence of a confidential relationship that gives rise to an informal fiduciary relationship is normally a question of fact, but when the issue is one of no evidence, it becomes a question of law. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as recognized in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002). Confidential relationships may exist where one person trusts in and relies upon another. *Id.* One party is justified in expecting another to act in its best interest when the parties have dealt with each other for a

5

sufficient time and have become accustomed to being guided by the judgment or advice of the other. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). But subjective trust alone is insufficient to create a confidential relationship; a confidential relationship exists "in those cases 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed.'" *Crim Truck*, 823 S.W.2d at 594 (quoting *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980)).

To prove a breach of the fiduciary duty that a confidential relationship creates, a plaintiff must show that a fiduciary relationship existed, that the defendant breached its fiduciary duty to the plaintiff, and that the plaintiff was injured or the defendant benefited as a result of the defendant's breach. *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.). Constructive fraud is the type of cause of action referred to when a party shows facts such as those. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). "Actual fraud usually involves dishonesty of purpose or intent to deceive, whereas constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Id.*

Before they lived together, Klein and Rubio knew each other for several months, were in an exclusive and intimate relationship, exchanged rings, and planned to live together in Rubio's house. Each party trusted the other and relied on the other's advice and judgment. Klein testified that he paid substantial amounts of money toward Rubio's house and business during the time that they lived together; he believed that he would recover his money at some point. In her testimony, Rubio contradicted Klein. Further, Rubio's ex-husband testified similarly to Rubio, but he did say that Klein never told him that the payments toward Rubio's house were a

6

gift.  Before she lived with Klein, Rubio had a mortgage on her house and was unemployed.  When Rubio and Klein separated, Rubio had no mortgage on her house and she owned a successful business with two locations.  The trial court, as factfinder, was free to believe Klein, and we cannot substitute our judgment for that of the trial court.  *See Wilson*, 168 S.W.3d at 819, 822.  Legally and factually sufficient evidence exists that Rubio and Klein were in a confidential relationship, that they owed fiduciary duties to each other, that Rubio breached her fiduciary duty to Klein when she refused to repay him, that her breach constituted constructive fraud, and that Rubio benefited from her breach.  *See id.* at 819; *Cain*, 709 S.W.2d at 176.  The trial court did not err when it awarded damages to Klein for the money he paid toward Rubio's house and business.  We overrule Rubio's first and third issues.

In her second issue, Rubio contends that the trial court erred when it offset Klein's damages by only $42,000 for unpaid rent applicable to the period of time that Klein lived in Rubio's house.  Rubio argues that the evidence showed that reasonable rent was at least $750 per month and that, at that rate, for the time the parties were together, the trial court should have offset the damages by $86,250.

The right to an offset of damages is an affirmative defense, equitable in nature, and must be pleaded by the party asserting it.  *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *see Jeter v. Citizens Nat'l Bank*, 419 S.W.2d 916, 918 (Tex. Civ. App.—Eastland 1967, writ ref'd n.r.e.) (citing *Van Winkle Gin & Mach. Co. v. Citizens' Bank of Buffalo*, 33 S.W. 862, 864 (Tex. 1896)).  The factfinder then determines the amount of the offset.  *See, e.g.*, *Levisay v. Cawyer*, No. 11-93-029-CV, 1994 WL 16189658, at *2 (Tex. App.—Eastland Apr. 20, 1994, no writ) (not designated for publication) (explaining that jury determined offset amount).  We review the factfinder's determination under the legal and factual sufficiency standards outlined above.  *See id.* (citing *Sterner v. Marathon Oil Co.*,

7

767 S.W.2d 686, 690 (Tex. 1989); *In re King's Estate*, 224 S.W.2d 660, 661 (Tex. 1951)).

Rubio pleaded for reasonable rent as an offset. Rubio testified as to the value of Rubio's house, and both parties testified about what they believed the amount of reasonable rent to be. Klein lived in Rubio's house rent-free for almost ten years, but there is also evidence that he paid the property taxes and paid off the mortgage during that time. Rubio testified that she paid her mortgage some months and property taxes some years but had no documentation of those payments. Conflicting testimony also existed about who paid to repair damages to the home and who paid for utilities. The trial court was free to believe Klein. *See Wilson*, 168 S.W.3d at 819.

The evidence at trial showed that a reasonable amount of rent for Rubio's house was $750 per month. But that was the rental value for the entire four-bedroom, three-bath house. Using Rubio's figures, total rent for Rubio's home for 115 months, the time that Klein lived there, would be $86,250. However, both Klein and Rubio occupied the house during the time that Klein lived there. Equitably, then, Klein's obligation would be one-half of the total rent, $43,125. Although the trial court awarded $42,000 as an offset, and half of the total rent would be $1,125 more than that, the trial court's judgment did not fall outside the zone of reasonable disagreement in light of the testimony that Klein paid for at least some of the repairs and utilities for almost ten years. *See id.*; *Jeter*, 419 S.W.2d at 918. Legally and factually sufficient evidence supports the trial court's judgment, and the trial court did not err when it credited Rubio with an offset of $42,000. *See Wilson*, 168 S.W.3d at 819; *Cain*, 709 S.W.2d at 176. We overrule Rubio's second issue.

We affirm the judgment of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

July 30, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.